■ MARILYN WALLEN, Plaintiff, v POLO GROUNDS BAR AND GRILL N.Y., INC., Doing Business as POLO GROUNDS, et al., Appellants, and MANOCHERIAN BROS., INC., Doing Business as MANOCHERIAN BROS., et al., Respondents, et al., Defendant. [603 NYS2d 132] —Order, Supreme Court, New York County (Leland DeGrasse, J.), entered February 25, 1993, which granted the motion of defendants-respondents Lerad Co., sued herein as Manocherian Bros., Inc., doing business as Manocherian Bros. and Lerad Co., Inc., doing business as Lerad Co. for summary judgment on their second cross claim against defendant-appellant, The Polo Grounds Bar and Grill N.Y., Inc., doing business as Polo Grounds, unanimously reversed on the law, the motion for summary judgment is denied and the matter is remanded to the trial court, with costs.

In the underlying action, the plaintiff seeks to recover for injuries allegedly sustained when she tripped and fell over a ramp leading into the defendant-appellant Polo Grounds' establishment, located at 1472 Third Avenue in Manhattan. Defendant-appellant, Polo Grounds, leased the premises from the defendants-respondents (hereinafter referred to as "Lerad Co."). Lerad Co.'s motion for summary judgment was based on Polo Grounds' alleged failure to obtain insurance as required by the lease agreement between the two parties. The subject lease consisted of a standard form "Store Lease" published by The Real Estate Board of New York, Inc. to which a rider containing various additional provisions was annexed.

In pertinent part, paragraph 8 of the lease required the tenant, at its sole cost and expense, "to maintain general public liability insurance in standard form in favor of Owner and Tenant against claims for bodily injury or death or property damage occurring in or upon the demised premises". The provision also stated that "[s]uch insurance shall be in an amount and with carriers acceptable to the Owner". It was further provided that, upon the tenant's default in obtaining the required insurance, the landlord could obtain or pay the charges for the insurance and charge the tenant additional rent therefor. The tenant was also required to indemnify the owner for all liability etc., not reimbursed by insurance including reasonable attorneys' fees.

Paragraph 56, contained in the rider section of the lease, states: "Tenant hereby agrees to carry sufficient plate glass insurance covering the demised premises. Tenant also agrees to cover liability insurance for operations of demised premises".

Whether or not a writing is ambiguous is a question of law *(Van Wagner Adv. Corp. v S & M Enters.,* 67 NY2d 186, 191). Paragraph 8 of the lease is unambiguous and does not lack essential terms. Paragraph 56 of the lease neither conflicts with nor supercedes paragraph 8. Therein the tenant agrees to procure plate glass and additional liability insurance other than that required pursuant to paragraph 8. Since we find that the lease agreement is a clear and complete document, evidence outside the four corners of the lease, namely the affidavit of the organizing principal of Polo Grounds Bar and Grill N.Y., Inc., offered to show that pursuant to the parties' negotiations Polo Grounds was obligated only to procure the insurance required by paragraph 56, is inadmissible to vary the unambiguous provisions of the lease *(W.W.W. Assocs. v Giancontieri,* 77 NY2d 157, 162).

It is a well settled principle that a landlord may contract with a tenant with respect to the procurement of insurance to cover the risk of liability to third parties *(see, Hogeland v Sibley, Lindsay & Curr Co.,* 42 NY2d 153, 161). Polo Grounds procured the insurance required by paragraph 56 but did not obtain the insurance required by paragraph 8. The usual penalty for breaching an agreement to procure insurance is to be liable for all the resulting damages *(Morel v City of New York,* 192 AD2d 428, 429). However, paragraph 8 of the lease here in question provided the owner with the option of procuring its own insurance and charging the tenant additional rent to cover the cost. While that provision did not impose a duty on Lerad Co. to procure its own insurance *(see, Rowland v 1306 Realty Associated,* 193 AD2d 726), the parties do not dispute that Lerad Co. did in fact obtain insurance which covers the claims asserted by the plaintiff. Thus Lerad Co. apparently exercised its option under paragraph 8 to procure its own insurance, and is therefore relegated by that action to recover the cost of such insurance from the tenant. It should be noted that it has been held, that where the landlord is aware that the tenant has failed to procure insurance, in violation of the lease, and the landlord procures its own insurance, damages are limited to the cost of such insurance *(Rodriguez v Nachamie,* 57 AD2d 920). In *Rodriguez (supra),* there was apparently no provision in the lease providing the landlord with the option to procure its own insurance and to then pass the cost on to the tenant.

While it is not disputed that Lerad Co. had its own insurance covering the plaintiff's claims, there are questions of fact which preclude summary judgment. These include questions

concerning whether Lerad Co. charged Polo Grounds additional rent to cover the cost of its insurance; the cost of that insurance; and the nature of the coverage. Given the existence of these and other issues of fact, summary judgment on Lerad Co.'s second cross claim should have been denied *(Zuckerman v City of New York,* 49 NY2d 557). Concur—Carro, J. P., Ellerin, Wallach and Ross, JJ.