[706 NYS2d 396]

ROSARIO INCHAUSTEGUI, Plaintiff, v 666 5TH AVENUE LIMITED PARTNERSHIP et al., Defendants and Third-Party Plaintiffs-Appellants. PETROFIN CORPORATION, Third-Party Defendant-Respondent.

First Department, April 13, 2000

## APPEARANCES OF COUNSEL

*Larry H. Lum* of counsel (*Wilson, Elser, Moskowitz, Edelman & Dicker, L. L. P.,* attorneys), for third-party plaintiffs-appellants.

*Robin Mary Heaney* of counsel (*Law Offices of Gregory J. Parisi,* attorneys), for third-party defendant-respondent.

## OPINION OF THE COURT

SAXE, J.

This appeal asks us to consider what relief is available to a landlord when its tenant breaches a lease provision requiring the procurement of liability insurance covering the landlord for claims related to injuries occurring on the premises, and the landlord itself obtains its own insurance policy covering the contemplated risks. We conclude that in one respect, the settled law too narrowly circumscribes the available relief, so we identify additional forms of possible damages.

This matter arises out of an underlying incident that occurred on December 7, 1995, when plaintiff Rosario Inchaustegui sustained personal injuries after being struck in the head by a dislodged ceiling tile while on premises subleased and occupied by respondent Petrofin Corporation, on the 21st floor of the office building located at 666 5th Avenue, New York. For purposes of the following discussion, Petrofin stands in the position of a tenant.

Paragraph 14 of the sublease agreement expressly requires that: "[The] subtenant [Petrofin] shall maintain comprehensive general public liability insurance in respect to the subleased premises and the conduct and operation of business therein, with sublessor and the landlord as additional insureds as set forth in the underlying lease." In amendments to the original lease, defendant 666 5th Avenue Limited Partnership is identified as the landlord; defendant Sumitomo Realty and Development is its general partner. Together, they are referred to jointly herein as the "landlord."

Petrofin obtained comprehensive general liability insurance for the subleased space, but failed to comply with the insur-

ance procurement provisions of the sublease agreement by naming the landlord as the additional insured under the purchased policy.

When plaintiff sued the landlord for his injuries, the landlord in turn brought a third-party claim against Petrofin, alleging a violation of the lease's insurance procurement provision. In the motion for summary judgment that followed, the landlord contended that Petrofin's failure to procure the requisite insurance coverage constituted a breach of the sublease agreement, entitling them to indemnity as well as money damages, including the costs incurred in the defense of the action. The IAS Court granted the motion, but limited the extent of their recoverable damages to the cost of maintaining and securing an independent policy of insurance.

For the reasons that follow, we modify, to a limited extent, the order appealed from, and otherwise affirm.

Generally, when a tenant breaches a contract with a landlord with respect to the procurement of insurance to cover the risk of liability to third parties, "[t]he usual penalty * * * is to be liable for all the resulting damages" (*Wallen v Polo Grounds Bar & Grill*, 198 AD2d 19, 20, citing *Morel v City of New York*, 192 AD2d 428, 429; *see, Kinney v Lisk Co.*, 76 NY2d 215, 219). However, case law limits the extent of damages available to a landlord when it procures its own insurance upon learning that the tenant has violated the lease by failing to procure insurance. These cases hold that under such circumstances the landlord's damages "are limited to the cost of such insurance" (*Wallen v Polo Grounds Bar & Grill, supra*, at 20, citing *Rodriguez v Nachamie*, 57 AD2d 920; *see, Wilson v Haagen Dazs Co.*, 201 AD2d 361; *Noah v 270 Lafayette Assocs.*, 233 AD2d 108).

The landlord contends that (1) these cases are contrary to settled law, as enunciated in *Kinney v Lisk Co.* (76 NY2d 215, *supra*) and *Roblee v Corning Community Coll.* (134 AD2d 803, *lv denied* 72 NY2d 803), and (2) that they are not controlling because they apply only where the contract requires or gives the landlord the option to procure its own insurance should the tenant fail to do so.

Initially, we note that the rule enunciated in *Kinney v Lisk Co.* (*supra*) does not *require* that where a party to a contract has breached an insurance procurement provision, the damages awarded must include the costs of indemnification and defense. Rather, it merely authorizes such an award where appropriate under the circumstances.

It is true that in *Wallen v Polo Grounds Bar & Grill* (198 AD2d 19, 20, *supra*) and the first few cases relying upon *Wallen*

to limit the landlord's damages to the cost of the substitute policy, the courts specifically cited the lease provision giving the landlord the option of procuring substitute coverage (*see, e.g., Wilson v Haagen Dazs Co.*, 201 AD2d 361, *supra*). However, more recent cases have limited the landlord's damages in this manner even where the lease, while requiring the tenant to procure insurance, contained no provision authorizing the landlord to recoup the cost of substitute insurance from the tenant as additional rent (*see, e.g., Noah v 270 Lafayette Assocs.*, 233 AD2d 108, *supra*).

Furthermore, in *Rodriguez v Nachamie* (57 AD2d 920, *supra*), the case upon which the current line of cases, beginning with *Wallen*, was founded, the Court held that since the landlord was aware that the tenant had failed to procure insurance, its damages were limited to the cost of such insurance. As in *Noah v 270 Lafayette Assocs.* (*supra*), the holding in *Rodriguez* was not based upon a lease provision authorizing the landlord to purchase substitute insurance. Moreover, the *Rodriguez* case itself relied on an older line of appellate authority, in which it had been held that "when the party whose interest is to be insured has knowledge or notice of the fact that the party agreeing to secure the insurance has failed to secure it," the measure of damages is "the amount of premiums which would have been charged for [the] insurance" (*Marconi Wireless Tel. Co. v Universal Transp. Co.*, 194 App Div 272, 273, *affd* 233 NY 581, citing *National Mahaiwe Bank v Hand*, 80 Hun 584, 589).

Thus, application of the reasoning of these earlier cases also supports the limitation of damages to the cost of premiums, regardless of whether or not the landlord's purchase of insurance was pursuant to a contractual provision; in those cases, the critical factor is simply whether the landlord knew of the tenant's failure to procure insurance.

Finally, this limitation of the landlord's damages upon purchasing substitute insurance is consistent with the nature of the remedy to which the landlord is entitled. The landlord's cause of action against the tenant is based upon a breach of contract. Damages for breach of contract are intended to put the aggrieved party in the same economic position he would have been in if the contract had been performed (5 Corbin, Contracts § 992; 11 Williston, Contracts § 1338 [3d ed]; McCormick, Damages 561; 3 Farnsworth, Contracts § 12.8, at 188-189). This includes all actual economic injury that the breaching party had reason to know would arise from the

breach, both direct or general damages, such as lost profits, and consequential damages, consisting of other economic injury the breaching party would have had reason to foresee as a probable result of the breach (*see, Hadley v Baxendale*, 9 Exch 341, 156 Eng Rep 145 [1854]).

However, the law does not permit the injured party to recover damages for losses that could have been avoided by taking reasonable and appropriate steps (3 Farnsworth, Contracts § 12.8, at 191-192; *see*, Restatement [Second] of Contracts § 350). Of course, the injured party is entitled to recoup from the breaching party the costs of such mitigation.

Applying these fundamental contract law principles to a tenant's breach of the insurance procurement provision of a lease reflects two possible categories of damages. First, if the tenant fails to obtain the contemplated insurance coverage on behalf of the landlord (whether because it procured no coverage at all, or because it neglected to have the landlord included as a named insured), in the absence of the contemplated insurance coverage, any ultimate liability judgment against the landlord would fall within the category of consequential damages, and the landlord would be entitled to recoup that amount, as well as any litigation expenses, from the tenant, since the tenant's failure to purchase insurance on behalf of the landlord could reasonably be expected to result in such economic injury to the landlord.

However, if the landlord itself purchased insurance equivalent to that which the tenant was contractually obligated to procure, regardless of whether or not its purchase was motivated by the knowledge that the tenant had breached the insurance procurement provision of the lease, the landlord's only damages arising from the tenant's breach of the lease are contract damages, equivalent to the costs of procuring the insurance policy.

The dissent takes the position that our conclusion contravenes the collateral source rule. We disagree. The purpose of that rule, which evolved in the context of tort law, is to ensure that the wrongdoer is required to pay for all damages his conduct caused to the injured party, without setoff from payments the injured party receives from other, collateral sources (*see, Rutzen v Monroe County Long Term Care Program*, 104 Misc 2d 1000, 1001). While the collateral source rule has been applied in some contract cases, as the dissent notes (*see, Rutzen v Monroe County Long Term Care Program, supra; Gusikoff v Republic Stor. Co.*, 241 App Div 889), we should keep in mind

that the nature of contract damages is quite distinct from that of tort damages (*see generally*, Fleming, *The Collateral Source Rule and Contract Damages*, 71 Cal L Rev 56, 60). While tort damages are expansive, focusing on the full spectrum of the harm caused by the tortfeasor, damages for a breach of contract are restrictive, limited to the economic injury actually caused to the claimant as a consequence of the other party's breach (*ibid.*).

An analysis of the application of the collateral source rule begins by determining the total extent of the damages to the injured party (here, the landlord) caused by the wrongdoer (here, the tenant). It then determines if the defendant is entitled to claim that this sum must be reduced by the amount available to the injured party from another source. Because the claim at issue here arises out of a breach of contract, the first step requires determination of the consequential economic damage caused to the landlord by the tenant's breach of the insurance procurement provision. As we discussed previously, because of the landlord's procurement of substitute insurance, the extent of damages to which it is entitled for this breach of contract is limited to the cost of its purchase of substitute coverage, and potentially, any other expenses not covered by the policy it procured. The collateral source rule is inapplicable. We are not setting off the damages to which the landlord is entitled from the tenant by the amount covered by the insurance; any insurance company's payment to the injured plaintiff is simply irrelevant to the analysis.

If this holding leaves the landlord's insurer without the right to recoup its expenses from the tenant by means of a subrogation claim, we perceive no prejudice. The premium was paid for the risk to be underwritten. Had it been the tenant, rather than the landlord, who applied to the same insurer for the coverage, the same premium would presumably have been paid and the same risk underwritten, and no subrogation claim would have been available to the insurer against the tenant.

Moreover, as the dissent recognizes, the concept of subrogation focuses on permitting the insurer to recoup its payment from "the party who has caused the damage" (*Winkelmann v Excelsior Ins. Co.*, 85 NY2d 577, 581). A tenant who failed to procure insurance has breached a lease provision, but did not cause the damage underlying the liability determination. This situation is distinguishable from one where a right of subrogation is clearly appropriate, for instance, where a tenant negligently causes a fire that ultimately destroys other ten-

ants' property. In such circumstances there is a wrongdoer against whom the landlord's insurer must have a subrogation right to seek to recoup payments it made to others, such as other building occupants.

Lastly, because we recognize that despite the coverage it obtained, there is a possibility the landlord may ultimately suffer certain other economic consequential damages as a result of the tenant's breach, besides the cost of the premiums, we modify the order of the IAS Court in one relatively minor respect. Although the *Wallen* line of cases seems to strictly limit the landlord's damages to the cost of the premiums, we believe the proper extent of damage recovery is slightly broader. In the cases limiting the landlord's damages to the cost of the premiums, the courts have drawn a distinction between two categories of damages. On one hand, there is the "cost of insurance," generally thought of as the premiums paid, which falls under the category of expenses the landlord has had to pay as a direct result of the breach, and for which it has no source of reimbursement; these costs are therefore recoverable by the landlord in an action against the tenant. On the other hand, the amount of any eventual liability determination against the landlord, and the costs of the defense, are not recoverable damages, inasmuch as both would be covered by the insurance procured by the landlord (*see, e.g., Wallen v Polo Grounds Bar & Grill, supra; Wilson v Haagen Dazs Co.*, 201 AD2d 361, *supra; Noah v 270 Lafayette Assocs.*, 233 AD2d 108, *supra*).

The same reasoning that authorizes a damages award for premiums paid by the landlord in these circumstances would also permit recovery for certain other out-of-pocket costs suffered by the landlord and not covered by the procured insurance. For instance, if the policy procured by the landlord required some sort of copayment, deductible, or other out-of-pocket payment by the landlord, such payments should, like the premiums, be recoverable as against the tenant who breached the procurement provision. Similarly, should the landlord's insurance rate be increased as a result of the liability claim, the increase in its future insurance premiums would be recoverable as breach of contract damages.

Accordingly, the order of the Supreme Court, New York County (Alice Schlesinger, J.), entered February 19, 1999, which, to the extent appealed from, limited the damages recoverable by third-party plaintiffs to the cost of purchasing the insurance that third-party defendant had failed to purchase for them, should be modified, on the law, to the extent of adding

the right of third-party plaintiffs to seek damages for any other expense arising out of the liability claim and not covered by the substitute insurance procured by the landlord, and as so modified, affirmed, without costs, and the matter remanded for determination of third-party plaintiffs' damages.

SULLIVAN, P. J. (dissenting). In my view, the majority improperly limits the damages recoverable by the landlord to the amounts paid for insurance premiums and certain "out-of-pocket costs suffered by the landlord and not covered by the procured insurance." I would modify the order to award the landlord all its damages resulting from the tenant's failure to procure insurance. Accordingly, I dissent.

The measure of damages for breaching a contractual provision to procure liability insurance naming the other party to the contract as an additional insured is all damages resulting from the breach, including the amount paid to dispose of the third party's claim, and defense expenses. (*Kinney v Lisk Co.*, 76 NY2d 215, 219; *Roblee v Corning Community College*, 134 AD2d 803, 805, *lv denied* 72 NY2d 803; *Morel v City of New York*, 192 AD2d 428, 429; *Marconi Wireless Tel. Co. v Universal Transp. Co.*, 194 App Div 272, *affd* 233 NY 581.) Even if the injured party " 'has been wholly or partly indemnified for his loss by insurance effected by him and to the procurement of which the wrongdoer did not contribute,' " his damages are not diminished. (*Kish v Board of Educ.*, 76 NY2d 379, 384, quoting *Healy v Rennert*, 9 NY2d 202, 206.) This principle is based on the collateral source doctrine, which "holds that as a general rule damages cannot be mitigated or reduced because of payments received by an injured party from a source wholly independent of and collateral to the wrongdoer." (*Rutzen v Monroe County Long Term Care Program*, 104 Misc 2d 1000, 1001; *Silinsky v State-Wide Ins. Co.*, 30 AD2d 1, 4.) The collateral source doctrine, which originated in tort, is applicable to cases sounding in contract as well. (*Rutzen v Monroe County Long Term Care Program, supra,* at 1001; *Gusikoff v Republic Stor. Co.*, 241 App Div 889.)

The reason for the rule is clear. The collateral payment by the insurer does not mitigate the wrongdoer's damages. "[P]roof of the insurance actually paid would not tend to show that the damage claimed was not actually occasioned by the wrong-doer * * * [I]t would simply show that compensation had been received by the injured party in whole or in part from some other person—not that the wrong-doer had made satisfaction[,] which alone could give him a defense." (*Drinkwater v Dins-*

*more*, 80 NY 390, 392; 36 NY Jur 2d, Damages, § 129, at 222-223.)

The majority's reliance on *Wallen v Polo Grounds Bar & Grill* (198 AD2d 19) and *Wilson v Haagen Dazs Co.* (201 AD2d 361) is misplaced. (*See also, Rodriguez v Nachamie*, 57 AD2d 920, 921.) In *Wallen* and *Wilson*, this Court held that a landlord which has exercised its contractual right to procure its own insurance covering the claims was not entitled to recover from the tenant for the amount of any eventual liability but only for the cost of its insurance premiums. In both cases, however, the lease's insurance procurement provisions afforded the landlord the right to procure its own insurance and collect, as additional rent, the amount of the premium from the tenant. The fact that the parties thus agreed to a remedy for the tenant's failure to comply with the procurement provision arguably affords a rationale for limiting the landlord's damages if it fails to utilize that remedy. No such provision is contained in the lease in this case.

In any event, this recent line of cases can be traced to the 1977 decision in *Rodriguez v Nachamie* (*supra*, 57 AD2d 920). In light of *Kinney v Lisk Co.*, (76 NY2d 215, *supra*), decided in 1990, which explicitly states that "because [the subcontractor] breached its agreement to procure liability insurance covering [the contractor], it is liable for the resulting damages, including [the contractor's] liability to plaintiff" (*supra*, at 219), *Rodriguez v Nachamie*'s limitation on damages for breach of an agreement to procure insurance is no longer valid. Thus, these recent cases, to the extent that they disagree with the principle that the proper measure of damages in claims for breach of an agreement to procure insurance is the resulting loss sustained, including the expense of defending the underlying third-party claim, misconstrue prevailing law.

To accept the result reached by the majority would remove the incentive for the tenant to comply with the procurement provision and would reward the tenant for its failure to comply, thus rendering the procurement provision meaningless. (*See, Santamaria v 1125 Park Ave. Corp.*, 238 AD2d 259, 260.) In addition, the majority's holding ignores the fact that, by including this provision in their agreement, the parties, sophisticated business entities, did not merely allocate the cost of insurance

premiums, but rather, allocated the risk of loss through the employment of insurance.[1]

Nor can it be said that the landlord will receive a windfall by virtue of any recovery against the tenant.[2] The landlord's insurer, upon payment of the indemnity to the injured third party and after providing a defense of the underlying action, would be automatically entitled, as a subrogee, to the landlord's rights against the tenant for its breach of its obligation to provide the landlord with liability coverage. (*See, Winkelmann v Excelsior Ins. Co.*, 85 NY2d 577, 581.) One of the objectives of subrogation is "to require the party who has caused the damage to reimburse the insurer for the payment the insurer has made." (*Supra,* at 581.) Thus, any recovery from the assertion of such right would—quite properly—be for the benefit of the insurer, not the landlord. The overriding principle here, which hardly needs to be stated, is that the parties to a transaction such as this are free to allocate the risk of loss as they see fit through insurance. (*Interested Underwriters at Lloyds v Ducor's, Inc.*, 65 NY2d 647.)

Tom and Rubin, JJ., concur with Saxe, J.; Sullivan, P. J., and Buckley, J., dissent in a separate opinion by Sullivan, P. J.

Order, Supreme Court, New York County, entered February 19, 1999, modified, on the law, to the extent of adding the right of third-party plaintiffs to seek damages for any other expense arising out of the liability claim and not covered by substitute insurance, and as so modified, affirmed, without costs, and the matter remanded for determination of third-party plaintiffs' damages.

---

1. There is not the slightest hint in this record that the landlord purchased liability insurance just for the demised premises in question, knowing that the tenant had failed to provide such coverage for the landlord's benefit. The notion that the landlord of a large office building in midtown Manhattan would not have building-wide liability coverage and would thereby expose itself to the consequences of allowing any part of its premises to remain uninsured is unrealistic. In any event, the landlord's knowledge of the tenant's default in procuring insurance for the landlord's account is of no legal consequence under the procurement provision here.

2. To the extent that whichever way this case turns out, one of the parties will be viewed as receiving a windfall, the tenant should not be allowed to reap an undeserved benefit at the landlord's expense in the face of its failure to comply with its clear contractual obligations. (*Supra.*)