**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**SEP 26 2002**

**PATRICK FISHER**
**Clerk**

**PUBLISH**

# UNITED STATES COURT OF APPEALS
# TENTH CIRCUIT

---

JOSEPH A. O'TOOLE,

      Plaintiff-Appellant,

v.

NORTHROP GRUMMAN CORP.,

      Defendant-Appellee,

No. 01-2281

---

**Appeal from the United States District Court**
**for the District of New Mexico**
**(D.C. No. CIV-99-1426-LH/RLP)**

---

Submitted on the briefs:

Alexander A. Wold, Jr., of Alexander Wold & Associates, P.C., Albuquerque, New Mexico, filed briefs for Plaintiff-Appellant.

Scott D. Gordon and Edward Ricco of Rodey, Dickason, Sloan, Akin & Robb, P.A., Albuquerque, New Mexico, filed a brief for Defendant-Appellee.

---

Before **SEYMOUR**, **PORFILIO** and **BALDOCK**, Circuit Judges.

---

**SEYMOUR**, Circuit Judge.

Joseph O'Toole appeals from summary judgment granted in favor of Northrop Grumman Corporation on his breach of contract claims. Our jurisdiction arises under 28 U.S.C. § 1291, and we reverse and remand. [1]

# I

In summarizing the applicable record, "we view the evidence and draw reasonable inferences therefrom in the light most favorable to the nonmoving party." *Simms v. Okla. ex rel. Dep't of Mental Health & Substance Abuse Servs.*, 165 F.3d 1321, 1326 (10th Cir. 1999). Mr. O'Toole was employed by Grumman Aerospace when, in 1994, the company loaned him to the federal government under a four-year "secondment agreement" to work on a project in San Diego. Aplt. App. at 27-28, 121. The secondment agreement included an agreement to pay for Mr. O'Toole's relocation at the end of his secondment. *Id.* at 139. A "buy out" option on his house was part of that agreement. *Id.* Grumman Aerospace paid for Mr. O'Toole's relocation expenses to San Diego in accordance with these relocation policies. While Mr. O'Toole was in San Diego, Grumman Aerospace was acquired by Northrop Corporation and became Northrop Grumman

---

[1] After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

Corporation (hereinafter "Grumman"). According to Grumman, upon the merger Grumman's relocation benefits changed. However, Mr. O'Toole presented evidence and testimony that his secondment agreement and the previous relocation policies were to remain in force on his particular contract. *Id.* at 26, 139-44, 164-65.

In 1996, Mr. O'Toole was assigned to continue working for the federal government at the Los Alamos National Labs in New Mexico. It is undisputed that in May 1996, Grumman agreed to pay for certain relocation expenses to Los Alamos, including moving expenses, expenses incurred in selling the San Diego home, duplicate housing costs, and expenses incurred in purchasing a home in Los Alamos. *See id*. at 65, 81-86. Mr. O'Toole claimed entitlement to additional costs under his original relocation agreement. When Grumman failed to timely pay certain of the undisputed costs, Mr. O'Toole withdrew money from his employee retirement plan to finance them, incurring taxes and penalties for doing so. *Id.* at 58, 66-67.

In May 1998, Grumman acknowledged its failure to pay and/or properly handle certain amounts it agreed it owed Mr. O'Toole, including duplicate housing costs and closing costs for the San Diego house sale. *Id.* at 57. Mr. O'Toole testified that Grumman refused to pay the undisputed amounts and the amounts it agreed to pay for purchase of a new home unless and until

Mr. O'Toole withdrew his claims for disputed relocation costs. *See id.* at 48-49. He testified that, as a result of Grumman's refusal to comply with its agreement, he was again forced to borrow money from his retirement account in October 1998 to buy a home in Los Alamos in order to avoid paying capital gains tax on the sale of his San Diego house. *Id.* at 153. The record shows that, as of October 12, 2000, Grumman still had not paid $26,230 of the undisputed expenses that Grumman stipulated Mr. O'Toole was entitled to receive. *Id.* at 65 (Pretrial Order).

In his suit for breach of contract, Mr. O'Toole claimed entitlement to the following: direct damages for these undisputed amounts still not received under the relocation agreements; direct damages arising from Grumman allegedly forcing Mr. O'Toole to sell his San Diego home at less than market value, refusing to perform under the disputed buy-out option, refusing to pay certain "gross up" benefits, and refusing to pay disputed relocation costs; consequential damages for expenses incurred as a result of Grumman's failure to timely pay or reimburse the undisputed relocation costs; and punitive damages for his claim that Grumman intentionally, and with wanton disregard, breached its promise to reimburse his relocation expenses. *See id.* at 65-67.

Mr. O'Toole included as consequential damages arising from Grumman's refusal to reimburse and/or pay for relocation and new-home purchase costs the

-4-

costs incurred in moving from one rental house to another[2] while awaiting reimbursement or payment of relocation and purchase costs; reimbursement for vacation days taken to enable Mr. O'Toole to move from one rental to another and then to a purchased home; reimbursement for interest and tax penalties on the withdrawals from Mr. O'Toole's retirement plan on monies used to pay relocation and purchase expenses; reimbursement for additional income taxes paid as a result of having no mortgage interest or real estate tax deduction during the time period Mr. O'Toole could not purchase another home for lack of funds; and reimbursement for mortgage principle payments not made because that money went toward rent. *See id.*

Grumman moved for partial summary judgment only on Mr. O'Toole's "alleged consequential damages," contending that because Mr. O'Toole freely admitted the parties never discussed, and Grumman never expressly promised to pay, these specific consequential damages, they could not have been "within the contemplation of both parties" as a matter of law. *Id.* at 16, 20-21; *see also id.* at 171 ("Specifically, Defendant argues that Plaintiff cannot recover his alleged damages, because the damages were not contemplated by the parties at the time they negotiated the relocation agreement for Plaintiff's move from San Diego to

---

[2] Mr. O'Toole contends he was forced to move from two rental houses due to no fault of his own pending the purchase of his Los Alamos home and during the time period in which Grumman refused to pay relocation costs.

Los Alamos in 1996."). After granting Grumman's motion for summary judgment on Mr. O'Toole's claims for consequential damages, the court dismissed the case "in its entirety," *id.* at 170, and entered final judgment on "all claims and liabilities of the parties," *id.* at 177. On Mr. O'Toole's motion for reconsideration, the court reinstated only the direct damages claim for "gross up" benefits, which the parties later settled. *Id.* at 195, 199.

## II

> We review the district court's grant of summary judgment de novo, applying the same legal standard used by the district court. Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

*Simms*, 165 F.3d at 1326 (citation omitted).

**A. Choice of law.** The first issue we must resolve is which law controls resolution of the contract issues. In its summary judgment motion, Grumman claimed that New Mexico restricts consequential damages to those contemplated at the time of the contract's formation, citing New Mexico case law. Mr. O'Toole urged application of New York law, alternatively contending Grumman had failed to establish even under New Mexico law that the consequential damages he claimed were not within the parties' contemplation, and that the damages were

-6-

reasonably foreseeable. The district court concluded that Mr. O'Toole's claims

for damages had no factual basis under either New Mexico or New York law.

Aplt. App. at 172. The court cited no legal authority for its conclusion as a

matter of law that because Mr. O'Toole admitted the parties did not expressly

discuss the specific consequential damages claimed, Grumman "never

contemplated paying to Plaintiff the ten elements of damages that he seeks," and

therefore Mr. O'Toole's claims must be dismissed. *Id.* at 175. In determining

whether the district court properly applied the substantive law, we must specify

which state's law controls, despite Grumman's assertion that "[c]hoice of law is

. . . immaterial." *See* Aplee. Br. at 12.

"A federal court sitting in diversity applies the substantive law, including

choice of law rules, of the forum state." *Barrett v. Tallon*, 30 F.3d 1296, 1300

(10th Cir. 1994). Mr. O'Toole contends New York law controls resolution of his

contract issues because his secondment agreement was executed in New York,

Grumman conceded performance of the relocation agreement was to be by an

entity in New York, and Grumman's agent who negotiated relocation

reimbursements was located in New York. As authority, he cites *Shope v. State

Farm Ins. Co*., 925 P.2d 515, 517 (N.M. 1996) (holding that New Mexico

interprets insurance contracts according to the law of the place where the contract

was executed). Grumman advances no reasons why New York law should not

apply and we conclude it controls resolution of the contract issues.

**B. Consequential damages.** We next address Mr. O'Toole's contention that the district court erred in dismissing his claims for consequential damages. Under New York law,

> [d]amages for breach of contract are intended to put the aggrieved party in the same economic position he would have been in if the contract had been performed. This includes all actual economic injury that the breaching party had reason to know would arise from the breach, both direct or general damages . . . and consequential damages, consisting of other economic injury the breaching party *would have had reason to foresee* as a probable result of the breach. However, the law does not permit the injured party to recover damages for losses that could have been avoided by taking reasonable and appropriate steps. Of course, the injured party is entitled to recoup from the breaching party the costs of such mitigation.

*Inchaustegui v. 666 5th Ave. Ltd. P'ship*, 706 N.Y.S.2d 396, 399 (N.Y. App. Div. 2000) (citations omitted) (emphasis added), *aff'd*, 749 N.E.2d 196 (N.Y. 2001).

> The rule that damages must be within the contemplation of the parties is a rule of foreseeability. The party breaching the contract is liable for those risks foreseen or which *should have been foreseen* at the time the contract was made. The breaching party need not have foreseen the breach itself, however, or the particular way the loss came about. It is only necessary that loss from a breach is foreseeable and probable.

*Ashland Mgmt. Inc. v. Janien*, 604 N.Y.S.2d 912, 915 (N.Y. 1993) (emphasis added) (citing Restatement (Second) of Contracts § 351 (1981)).

Whether consequential damages were contemplated or foreseeable by the parties is determined by an objective test.

> "[A] party in breach need not have made a 'tacit agreement' to be liable for the [foreseeable] loss. Nor must he have had the loss in mind when making the contract, for the test is an objective one based on what he had reason to foresee. There is no requirement of foreseeablility with respect to the injured party."

RESTATEMENT (SECOND) OF CONTRACTS § 351 cmt. a (1981). Thus, the absence of express provisions demonstrating that recovery of consequential damages was *actually* contemplated or discussed does not control whether Mr. O'Toole's damages were reasonably foreseeable.

> To determine those damages which are reasonably contemplated by the parties, "the nature, purpose, and particular circumstances of the contract known by the parties should be considered . . . as well as 'what liability the defendant fairly may be supposed to have assumed consciously, or to have warranted the plaintiff reasonably to suppose that it assumed, when the contract was made.'"

*Sabbeth Indus. Ltd. v. Pa. Lumbermens Mut. Ins. Co.*, 656 N.Y.S.2d 475, 477 (N.Y. App. Div. 1997) (citations omitted).

The district court erred by limiting damages "within the contemplation of the parties" as a matter of law to those consequential damages expressly discussed at the time of contracting. [3] It was reasonably foreseeable here, for example, that

---

[3] Our conclusion would be the same even if we applied New Mexico law because the same test of foreseeablity applies. *See Reed v. Aaacon Auto Transport, Inc.*, 637 F.2d 1302, 1305 (10th Cir. 1981) (noting that New Mexico

(continued...)

Grumman's failure to promptly pay or reimburse relocation expenses would result in Mr. O'Toole having to borrow money to pay for those expenses from some source, resulting in extra costs to him. *See Acquista v. N.Y. Life Ins. Co.*, 730 N.Y.S.2d 272, 276 (N.Y. App. Div. 2001) (holding that money damages equal to what breaching insurer should have paid in first place may not be sufficient to place plaintiff in economic position he would have been in had contract been performed because assumption that plaintiff has access to alternative source of funds to pay that which insurer wrongfully refused to pay is "frequently an inaccurate assumption"); *Airy Dev. Assocs. v. Sav. Bank of Utica*, 660 N.Y.S.2d 453, 455 (N.Y. App. Div. 1997) (holding that, after lender refused to honor its loan commitment, borrower may have been entitled to consequential damages of additional interest charges until borrower obtained subsequent mortgage from different lender).

---

[3](...continued)
follows the Restatement of Contracts regarding foreseeability and the principle that whether an item of damage is within the contemplation of the parties involves an objective test inquiring what the defendant "might then have foreseen as a reasonable man, in the light of the facts known to him, and does not confine the inquiry to what he actually did foresee"), *overruled on other grounds by Underwriters at Lloyds of London v. N. Am. Van Lines*, 890 F.2d 1112, 1113 (10th Cir. 1989) (citation omitted); *cf. State Farm Gen. Ins. Co. v. Clifton*, 527 P.2d 798, 799 (N.M. 1974) (holding that requested damages were not within the contemplation of the parties because they were not "the natural and foreseeable consequences of the claimed breach," and therefore were not recoverable).

**C. Dismissal of entire case.** Finally, we address Mr. O'Toole's claim that the district court erred in dismissing the case when Grumman had moved only for partial summary judgment on the issue of consequential damages. Rule 56 provides for summary judgment motions on particular issues or claims, and it is unquestionable that a non-moving party is not required to establish the existence of genuine issues of material fact for trial on matters not addressed by the summary judgment motion. *See Beaird v. Seagate Tech., Inc.*, 145 F.3d 1159, 1165 (10th Cir. 1998) (noting that "[t]he substantive law at issue determines which facts are material [on summary judgment] in a given case"). Grumman did not contend there were no disputed issues of material fact regarding Mr. O'Toole's claims for consequential, direct, and punitive damages; it claimed only that certain undisputed admissions entitled it to summary judgment as a matter of law on the issue of consequential damages. Grumman argued a narrow legal issue: whether Mr. O'Toole's admission that the parties did not expressly discuss the specific items of damages it characterized as consequential damages [4] entitled

---

[4] Although the district court roundly criticized Mr. O'Toole for failing to "controvert [] Defendant's material facts" and deemed admitted Grumman's "rendition of the consequential damages" on its determination that Mr. O'Toole failed to follow the rules of procedure, Aplt. App. at 171-73, this "rendition" of damages was not a "material fact" but rather a legal conclusion. Moreover, the pleadings show that Mr. O'Toole did challenge Grumman's characterization of his damage claims. For example, he asserted that some of the damages Grumman characterized as consequential were either direct damages or damages incurred as

(continued...)

-11-

it to judgment as a matter of law as to those damages.  In meeting this argument, Mr. O'Toole had no duty to provide the district court with a "concise statement of the material facts as to which he contends a genuine issue exists," Aplt. App. at 179, on issues *not* raised by the summary judgment motion.  On undisputed facts, he simply had to challenge Grumman's legal argument with contrary legal authority, which he did.  *See id.* at 97-101, 104-06.

The pretrial order shows that, at the time summary judgment was granted, Grumman admitted it still had not paid over $26,000 in stipulated direct damages owed for undisputed relocation expenses.  *Id.* at 65.  By dismissing the whole case, the district court erroneously denied Mr. O'Toole recovery of those undisputed direct damages.  In addition, Grumman never moved for summary judgment on Mr. O'Toole's claim for punitive damages for its allegedly wilful, wrongful, and bad faith refusal to pay undisputed expenses.  Thus, the district court erroneously dismissed those claims as well.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 326 (1986) (a *sua sponte* order of summary judgment is appropriate only if "the losing party was on notice that she had to come forward with all of her evidence").

---

[4](...continued)
a result of his attempt to mitigate damages. *See id.* at 101-04.

The judgment of the United States District Court for the District of New Mexico is REVERSED and this case is REMANDED for further proceedings consistent with this opinion .