FILED
United States Court of Appeals
Tenth Circuit

**February 5, 2010**

Elisabeth A. Shumaker
Clerk of Court

UNITED STATES COURT OF APPEALS

FOR THE TENTH CIRCUIT

---

JOSEPH O'TOOLE,

     Plaintiff-Appellant,

v.

NORTHROP GRUMMAN CORP.,

     Defendant-Appellee.

No. 09-2018
(D.C. No. 1:99-CV-01426-LH-RLP)
(D. N.M.)

---

**ORDER AND JUDGMENT**[*]

---

Before **MURPHY**, **McKAY**, and **BALDOCK**, Circuit Judges.

---

This is the fourth appeal concerning Mr. O'Toole's claims for damages

arising out of Northrop Grumman Corporation's breach of a contract to pay his

relocation expenses from San Diego, California to Los Alamos, New Mexico.

*See O'Toole v. Northrop Grumman Corp.*, 499 F.3d 1218 (10th Cir. 2007)

(*O'Toole III*); *O'Toole v. Northrop Grumman Corp.*, 113 F. App'x 314 (10th Cir.

---

[*]    After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist the determination of
this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is
therefore ordered submitted without oral argument. This order and judgment is
not binding precedent, except under the doctrines of law of the case, res judicata,
and collateral estoppel. It may be cited, however, for its persuasive value
consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

2004) (*O'Toole II*); *O'Toole v. Northrop Grumman Corp.*, 305 F.3d 1222 (10th Cir. 2002) (*O'Toole I*).  We have jurisdiction over this diversity action under 28 U.S.C. § 1291.  We affirm in part and reverse and remand in part.

## I.  Background

Mr. O'Toole was an employee of Northrop Grumman in 1996 when he was transferred from his position in San Diego, California, to a position in Los Alamos, New Mexico.  Northrop Grumman initially refused to reimburse Mr. O'Toole for some of his relocation expenses.  As a result, Mr. O'Toole withdrew money from his Northrop Grumman Savings and Investment Plan ("SIP") in 1996 and 1998 to cover those expenses.  Mr. O'Toole incurred taxes and penalties for making these early withdrawals from his SIP account.

Mr. O'Toole filed an action for breach of contract in 1999.  He sought direct damages, consequential damages, and punitive damages for Northrop Grumman's failure to pay the relocation expenses.  In 2000, the district court granted summary judgment in favor of Northrop Grumman on all claims, although Northrop Grumman had only moved for partial summary judgment on Mr. O'Toole's claims for consequential damages.  Mr. O'Toole appealed, and we reversed.  In 2001, while the first appeal was pending, the parties settled some of the claims for direct damages.

In 2003, the district court held a bench trial solely on the issue of damages because Northrop Grumman had conceded that it had breached the contract with

respect to reimbursement of certain relocation expenses. The claims at issue for trial were the remaining claims for direct damages that had not been resolved by the settlement, all of the claims for consequential damages, and the claim for punitive damages. At the conclusion of the trial, the district court entered judgment in favor of Northrop Grumman on all claims. Mr. O'Toole appealed.

In *O'Toole II*, we affirmed in part and reversed in part the district court's decision denying all claims for relief. We affirmed the district court's decision denying Mr. O'Toole's claim for direct damages and his claim for punitive damages. We reversed the district court's decision denying all of Mr. O'Toole's claims for consequential damages,[1] and we remanded "for entry of an award of consequential damages that includes at least an amount reimbursing the penalties paid and interest lost on the funds Mr. O'Toole was forced to withdraw from his retirement account to pay for undisputed relocation costs." *O'Toole II*, 113 F. App'x at 319. We further directed the district court to "consider all other claims for consequential damages and make specific findings as to each claim." *Id*.

On remand, Mr. O'Toole filed a post-trial brief on damages in which he separated his consequential damages claims into four categories: (1) "basic

---

[1] In Mr. O'Toole's proposed findings of fact and conclusions of law, he identified fifteen categories of consequential damages to which he was allegedly entitled. *See* Aplt. App., Vol. IV at 887-88.

consequential damages"; (2) "gross-up" on the basic consequential damages; (3) "lost earnings from [the SIP funds]"; and (4) "gross-up" on the SIP damages. *See* Aplt. App., Vol. V at 957. The bulk of Mr. O'Toole's basic consequential damages related to his inability to purchase a home during his second year in Los Alamos because he was waiting for Northrop Grumman to reimburse his relocation expenses. Those damages included: moving expenses for moving between rental homes that year; additional taxes from having no mortgage deduction that year; and the value of principal payments he was unable to make during that year because he was paying rent instead of paying principal towards a mortgage on his own home. Also included in his basic consequential damages were the taxes and penalties he had to pay on the withdrawals from his SIP account. Mr. O'Toole sought as a separate category of damages the earnings he would have accrued on his SIP funds, if he had not had to withdraw them to pay for relocation expenses. Finally, Mr. O'Toole requested that the district court gross-up[2] his basic consequential damages and his SIP damages.

After Northrop Grumman filed its response and Mr. O'Toole filed his reply, the district court entered judgment in favor of Mr. O'Toole in the amount of $31,970, which represented awards of damages for taxes and penalties on the SIP withdrawals in 1996 and 1998, with prejudgment interest; and $2,000 to account

---

[2] "'Gross-up' is the name given to an increase in the damage award to offset the taxes that will be payable on the award." *O'Toole III*, 499 F.3d at 1226.

-4-

for principal payments he would have made on his mortgage, with no prejudgment interest. The district court denied the claims for the remaining items of basic consequential damages and declined to gross-up any of the amounts it did award. The district court also denied Mr. O'Toole's claim for the lost earnings from his SIP funds. Mr. O'Toole appealed.

In *O'Toole III*, we affirmed in part and reversed in part the district court's decision. We affirmed the district court's decision denying Mr. O'Toole's claim for moving expenses during his second year in Los Alamos. We reversed and remanded for the district court to reconsider the following issues: (1) the lost mortgage interest deduction; (2) lost earnings from the SIP and earnings on those earnings; (3) prejudgment interest on the $2,000 award for lost principal; and (4) whether Mr. O'Toole was entitled to gross-up on his damages.

On remand, the district court ordered the parties to file briefs addressing the remaining issues in the case. The district court then entered judgment in favor of Mr. O'Toole in the amount of $48,817.02, which reflected awards for the lost mortgage interest deduction and lost SIP earnings. The district court denied prejudgment interest on the $2,000 award for lost principal and declined to gross-up the amounts it awarded. Mr. O'Toole now appeals for the fourth time.

## II.  Discussion

Mr. O'Toole challenges three of the four issues the district court decided on remand.  He argues that the district court erred in determining the amount of his lost SIP earnings, in refusing to gross-up his damages, and in denying prejudgment interest on the award for lost principal.  He does not challenge the district court's decision granting him an award for his lost mortgage interest deduction.  Mr. O'Toole also contends that the district court erred in failing to address his argument that he has incurred additional consequential damages arising out of the loss of his tax-deferred 401(k) retirement account.

A.  <u>Lost SIP Earnings and Earnings on Earnings</u>

Mr. O'Toole sought an award of consequential damages for lost earnings on the retirement funds he had to withdraw from his SIP to pay for relocation expenses.  Specifically, he sought "lost earnings on his stock funds from the date of the SIP withdrawals in 1996 and 1998 until Northrop Grumman paid undisputed relocation expenses in June 2001, and lost earnings on unpaid earnings after that date until the date they are paid." *O'Toole III*, 499 F.3d at 1223.  The district court initially determined that Mr. O'Toole was not entitled to lost earnings on his SIP funds because there was no factual basis to support his claim for an average growth rate of 12% for his SIP funds after 1999.[3]  In *O'Toole III*,

_____

[3]     Mr. O'Toole was laid off from his employment at Northrop Grumman in
(continued...)

-6-

we remanded Mr. O'Toole's claim for lost SIP earnings with the following instructions: "[t]he court should take judicial notice of proof of earnings after 1999 from Northrop Grumman's website, and should consider whether 12% is a reasonable average for all years for lost earnings and earnings on earnings and whether Mr. O'Toole would have left his money invested in [the U.S. Equity] fund as he asserted." *Id*. at 1225.

    1. *The U.S. Equity Fund Determination*

On remand, the district court first considered the question of whether Mr. O'Toole would have left his money in the U.S. Equity Fund if his money had remained in the SIP. Although noting that the question was "inherently speculative," the court found that Mr. O'Toole would have kept his money in the U.S. Equity Fund. Aplt. App., Vol. VI at 1135. This finding was based on the evidence that Mr. O'Toole introduced at trial showing that he had invested in two funds in the SIP—the U.S. Equity Fund and the Equity Growth (Magellan) Fund—from 1996 through 1999. Because the Magellan Fund was ultimately discontinued, the district court agreed with our observation in *O'Toole III* that "'[i]t seems reasonable to assume that Mr. O'Toole would have left his money invested in [the U.S. Equity Fund] after the other fund in which he was invested was discontinued.'" *Id*. (quoting *O'Toole III*, 499 F.3d at 1225). On appeal,

---

[3](...continued)
1997. He withdrew all of the funds from his SIP by the end of 1999.

Mr. O'Toole asserts that the district court erred in determining that he would have left his investments in the U.S. Equity Fund.

"We review the district court's findings on damages for clear error. To reverse under this standard requires that, based on the entire evidence, we have a definite and firm conviction that a mistake has been committed." *O'Toole III*, 499 F.3d at 1221 (quotations and citations omitted). Mr. O'Toole fails to cite to any evidence demonstrating clear error. As noted above, the only evidence at trial about Mr. O'Toole's investment history was his testimony that for the years 1996-1999 he invested his retirement savings in two funds, the U.S. Equity Fund and the Equity Growth (Magellan) Fund. Aplt. Supp. App. at 178-79. He did not introduce any other evidence about his investment history or his investment strategy. Instead, Mr. O'Toole relied on his investment performance in those funds during the 1996-1999 time period to provide the basis for his proposal that the district court use a 12% average rate of return for the subsequent years when his money was no longer in the SIP. *Id.* at 179-80. Based on the evidence introduced at trial, the district court did not err in finding that Mr. O'Toole would have left his money in the U.S. Equity Fund.

In conjunction with this argument, Mr. O'Toole argues that the district court erred by denying his request for a supplemental hearing to introduce new evidence about his investment strategy and in refusing to consider new evidence attached to his post-trial brief. Mr. O'Toole made the supplemental hearing

request in his second post-trial brief and also attached additional evidence about his investment strategy as exhibits to the brief. In its memorandum opinion, the district court denied the request to reopen the record for the receipt of more evidence.

Mr. O'Toole argues that the introduction of supplemental evidence is necessary because of the passage of time. But some of the new evidence Mr. O'Toole now wants to introduce could have been introduced at trial in 2003. For example, Mr. O'Toole proposes to offer opinions from his investment advisors regarding the funds in which he likely would have invested in the SIP based on his non-SIP investments during the period from 1999 through 2003. This evidence was available and could have been presented at trial in 2003. Moreover, we did not remand to the district court with directions to reopen the case and retry it. Although we issued our decision in *O'Toole III* in 2007—four years after the trial—we directed the district court to base the damage award on judicial notice of the earnings for the Northrop Grumman funds, which was the method Mr. O'Toole requested in his first post-trial brief on damages, *see* Aplt. App., Vol. V at 953 n.60. Accordingly, we conclude that the district court did not abuse its discretion in refusing to consider Mr. O'Toole's new evidence and in denying his request for a supplemental hearing. *See Mason v. Okla. Tpk. Auth.*, 182 F.3d 1212, 1215 (10th Cir. 1999) (concluding district court did not abuse its discretion in rejecting defendant's attempt to augment the evidentiary record on

remand); *see Otero v. Mesa County Valley Sch. Dist. No. 51,* 628 F.2d 1271, 1272 (10th Cir. 1980) (holding that district court did not err in refusing to reopen case and receive additional evidence when we did not remand with directions to do so).    2.  *Rate of Return for the U.S. Equity Fund*

Next, the district court considered what interest rate the U.S. Equity Fund would have yielded.  Following our directions, the district court took judicial notice of the proof of earnings for the U.S. Equity Fund from Northrop Grumman's website.  The district court then took the ten-year average rate of return for the U.S. Equity Fund as published on the website, which was 4.5%, and used that as the interest rate for Mr. O'Toole's claim.  Based on this determination, the district court concluded that Mr. O'Toole's estimate of 12% growth was not a reasonable average interest rate.

Mr. O'Toole contends that the district court erred by using the ten-year average earnings rate for the U.S. Equity Fund from the Northrop Grumman SIP report.  He asserts instead that the district court should have used the actual quarter-by-quarter interest rates for the U.S. Equity Fund, which would result in a significantly higher return.  Mr. O'Toole illustrates this difference in Table 1 attached to his brief, which shows the calculations using the quarter-by-quarter earnings rates.  *See* Aplt. Br. at 46-47.  The quarter-by-quarter rate analysis results in an award of $69,578.47, as compared to the ten-year average rate used by the district court, which resulted in an award of $48,817.02.  *Compare id.*

*with* Aplt. App., Vol. VI at 1136-37.  Northrop Grumman concedes that the district court erred in using the ten-year average earnings rate to calculate the U.S. Equity Fund's rate of growth.  Northrop Grumman agrees with Mr. O'Toole that his "lost earnings from the retirement plan through the date of the district court's judgment should be calculated . . . on a quarter-by-quarter basis using, for each quarter, the actual earnings rate figures published by Northrop Grumman."  Aplee. Br. at 12.  Because the district court's ten-year average rate does not yield the same result as calculating the interest on a quarter-by-quarter basis using the actual rate figures published by Northrop Grumman, we agree that the district court erred.  Accordingly, we reverse the district court's decision on this issue, and we direct the district court on remand to amend its judgment to reflect the quarter-by-quarter earnings for the U.S. Equity Fund through the date of the amended judgment.

### B.  Gross-up on the Damages Awards

Mr. O'Toole contends that the district court erred in declining to gross-up his damages awards to compensate for the taxation of those awards.  Although Northrop Grumman opposed grossing-up the damages in its briefing before the district court, it now agrees that it would be appropriate to gross-up all of the SIP related damages.  *See id*. at 7, 22, 23-34.  The parties now both agree that grossing up the damages award in the amended judgment would be the correct

course.  *See id.*; Aplt. Reply Br. at 10-11.  As there is no longer a dispute between the parties on this issue, we need not reach the question of whether the district court erred in declining to gross-up the damages award.  Because the parties are in agreement, we will direct the district court on remand to gross-up the damages award in the amended judgment.

C. Loss of Tax-Deferred 401(k) Plan

Mr. O'Toole argues that the district court erred by failing to address arguments he made regarding the amount of damages he should be awarded for no longer having his money in a tax-deferred 401(k) plan.[4]  But Northrop Grumman asserts that this is a new theory of damages, and that the district court was not obligated on remand to consider this new theory or the accompanying new evidence.  We agree.

Mr. O'Toole did not include this theory of damages in his pretrial order, *see* Aplt. App., Vol. IV at 858-59; or his proposed findings of fact and conclusions of law, *see id*. at 887-88.  Mr. O'Toole did not identify this theory of damages in his testimony at trial.  *See* Aplt. Supp. App. at 143-93 (using demonstrative exhibit and testifying item by item about damages).[5]  Nor was the

---

[4]     Mr. O'Toole relies on the Seventh Circuit's decision in *Oddi v. Ayco Corp.*, 947 F.2d 257 (7th Cir. 1991), to support this theory of damages.  *See* Aplt. Br. at 37.

[5]     Although the demonstrative exhibit is not part of the record, there is another exhibit titled "Reimbursement to Joseph A. O'Toole" that appears to

(continued...)

-12-

theory presented in his first post-trial brief after this court's second remand, *see* Aplt. App., Vol. V at 941-58, or as part of his appeal in *O'Toole III*. *See* 499 F.3d at 1220-21 (identifying damage claims that district court awarded or denied and identifying Mr. O'Toole's contentions on appeal). Accordingly, it was not identified as an issue for the district court to reconsider on remand. *See id*. at 1222-27.

Mr. O'Toole first raised this theory to the district court in 1998 in his second post-trial brief on remand after *O'Toole III*. *See* Aplt. App., Vol. VI at 1043-50. But our directions to the district court on remand did not involve the reopening of the trial or the consideration of new issues. *See O'Toole III*, 499 F.3d at 1227 ("On remand, the district court should make specific and detailed findings regarding the matters *left open by our opinion*." (emphasis added)). Accordingly, the district court did not abuse its discretion in declining to address this new theory of damages. *See Mason*, 182 F.3d at 1215; *Otero*, 628 F.2d at 1272.

---

[5](...continued)
track most of the damages identified in the demonstrative exhibit. *Compare* Aplt. Supp. App. at 143-93 with Aplt. App., Vol. III at 837-38.

D.    Prejudgment Interest on Award for Lost Principal

Mr. O'Toole sought consequential damages for the one-year delay in his ability to purchase a home in the form of lost principal payments that he would have made, if he had been able to purchase a home. Relying on Mr. O'Toole's mortgage payments once he did purchase a home, the district court concluded that this lost principal would amount to approximately $2,000. *See* Aplt. App. at 993, Vol. V. The district court awarded this amount without prejudgment interest, but did not offer any explanation for this part of its decision. *See id*. In *O'Toole III*, we noted that it was difficult to review the district court's exercise of discretion on this claim because the court gave no explanation for denying prejudgment interest. *See* 499 F.3d at 1226. Accordingly, we remanded this claim "for further elaboration." *Id*.

> On remand, the district court explained that the $2,000 award:
>
> was premised on actual mortgage payments which the plaintiff made at a later date when he did purchase a house. The amount was not in any way liquidated or settled at the time the plaintiff purchased his home in 1998, and of course, we have no evidence as to what he actually would have paid during the period of 1997-1998, resulting in an increase in the equity in his home. As this was essentially an estimate based upon subsequent events, the Court concluded that it would be unfair to grant the plaintiff prejudgment interest on that amount.

Aplt. App., Vol. VI at 1138.

Although Mr. O'Toole contends that the district court erred in denying him prejudgment interest on this claim, we will uphold a district court's decision

-14-

denying an award of prejudgment interest unless the district court abused its discretion. *See F.D.I.C. v. Rocket Oil Co.*, 865 F.2d 1158, 1160 (10th Cir. 1989). We see no abuse of discretion in the district court's decision declining to award prejudgment interest on the award for lost principal. *See id.* and n.1 (explaining that district court has broad discretion in deciding whether to grant prejudgment interest and noting that under this standard, "a trial court's decision will not be disturbed unless the appellate court has a definite and firm conviction that the lower court made a clear error of judgment or exceeded the bounds of permissible choice in the circumstances").

## III. Conclusion

The judgment of the district court is AFFIRMED in part and REVERSED and REMANDED in part. On remand, the district court shall enter an amended judgment in favor of Mr. O'Toole that (1) awards damages based on the quarter-by-quarter earnings rate for the U.S. Equity Fund through the date of the amended judgment; and (2) grosses-up the damages award consistent with the applicable tax rates.

Entered for the Court

Monroe G. McKay
Circuit Judge