**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**SEP 9 2004**

**PATRICK FISHER**
**Clerk**

UNITED STATES COURT OF APPEALS

FOR THE TENTH CIRCUIT

JOSEPH A. O'TOOLE,

      Plaintiff-Appellant,

v.

NORTHROP GRUMMAN CORP.,

      Defendant-Appellee.

No. 03-2158
(D.C. No. CIV-99-1426 LH/RLP)
(D. N.M.)

ORDER AND JUDGMENT   *

Before **BARRETT** , **McKAY** , and **PORFILIO** , Circuit Judges.

     After examining the briefs and appellate record, this panel has determined unanimously to grant the parties' request for a decision on the briefs without oral argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

     Plaintiff/Appellant Joseph O'Toole appeals from a final judgment in favor of his former employer, defendant Northrop Grumman Corporation (Grumman),

---

    \*     This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

entered after a bench trial, on his claims for consequential and punitive damages for breach of a contract to relocate Mr. O'Toole from San Diego to Los Alamos, New Mexico. We conclude that the district court did not err in declining to hold Grumman liable for the capital loss on the sale of Mr. O'Toole's San Diego home and in denying an award of punitive damages. But we conclude that the district court erred in holding that a pre-trial settlement on certain of Mr. O'Toole's undisputed contract claims precluded the recovery of consequential damages associated with Grumman's earlier refusal to pay those claims. We also conclude that the court erred in holding that Mr. O'Toole failed to identify a provision of the relocation contract that Grumman breached and in refusing to award consequential damages on that basis. Our jurisdiction over this appeal arises under 28 U.S.C. § 1291. We affirm in part and reverse in part.

## I. Relevant facts and proceedings

As we noted in our opinion on a previous appeal in this case, the following facts are undisputed:

> [I]n May 1996, Grumman agreed to pay for certain relocation expenses to Los Alamos, including moving expenses, expenses incurred in selling the San Diego home, duplicate housing costs, and expenses incurred in purchasing a home in Los Alamos. Mr. O'Toole claimed entitlement to additional costs under his original relocation agreement. When Grumman failed to timely pay certain of the undisputed costs, Mr. O'Toole withdrew money from his employee retirement plan to finance them, incurring taxes and penalties for doing so.

-2-

In May 1998, Grumman acknowledged its failure to pay and/or properly handle certain amounts it agreed it owed Mr. O'Toole, including duplicate housing costs and closing costs for the San Diego house sale. Mr. O'Toole testified that Grumman refused to pay the undisputed amounts and the amounts it agreed to pay for purchase of a new home unless and until Mr. O'Toole withdrew his claims for disputed relocation costs. He testified that, as a result of Grumman's refusal to comply with its agreement, he was again forced to borrow money from his retirement account in October 1998 to buy a home in Los Alamos in order to avoid paying capital gains tax on the sale of his San Diego house. The record shows that, as of October 12, 2000, Grumman still had not paid $26,230 of the undisputed expenses that Grumman stipulated Mr. O'Toole was entitled to receive.

In his suit for breach of contract, Mr. O'Toole claimed entitlement to the following: direct damages for these undisputed amounts still not received under the relocation agreements; direct damages arising from Grumman allegedly forcing Mr. O'Toole to sell his San Diego home at less than market value, refusing to perform under the disputed buy-out option, refusing to pay certain "gross up" benefits, and refusing to pay disputed relocation costs; consequential damages for expenses incurred as a result of Grumman's failure to timely pay or reimburse the undisputed relocation costs; and punitive damages for his claim that Grumman intentionally, and with wanton disregard, breached its promise to reimburse his relocation expenses.

Mr. O'Toole included as consequential damages arising from Grumman's refusal to reimburse and/or pay for relocation and new-home purchase costs the costs incurred in moving from one rental house to another while awaiting reimbursement or payment of relocation and purchase costs; reimbursement for vacation days taken to enable Mr. O'Toole to move from one rental to another and then to a purchased home; reimbursement for interest and tax penalties on the withdrawals from Mr. O'Toole's retirement plan on monies used to pay relocation and purchase expenses; reimbursement for additional income taxes paid as a result of having no mortgage interest or real estate tax deduction during the time period Mr. O'Toole could not purchase another home for lack of funds; and reimbursement for mortgage principle payments not made because that money went toward rent.

*O'Toole v. Northrop Grumman*, 305 F.3d 1222, 1224 (10th Cir. 2002) (citations

to record and footnote omitted).  In December 2000 the district court granted

summary judgment on the issue of consequential damages.  We reversed.  We

held that New York law controlled resolution of the contract issues.  *Id.* at 1225.

We further held that the court had erred

> by limiting damages "within the contemplation of the parties" as a
> matter of law to those consequential damages expressly discussed at
> the time of contracting.  It was reasonably foreseeable here, for
> example, that Grumman's failure to promptly pay or reimburse
> relocation expenses would result in Mr. O'Toole having to borrow
> money to pay for those expenses from some source, resulting in extra
> costs to him.  *See Acquista v. N.Y. Life Ins. Co.*, 285 A.D. 2d 73, 730
> N.Y.S.2d 272, 276 (N.Y. App. Div. 2001) (holding that money
> damages equal to what breaching insurer should have paid in first
> place may not be sufficient to place plaintiff in economic position he
> would have been in had contract been performed because assumption
> that plaintiff has access to alternative source of funds to pay that
> which insurer wrongfully refused to pay is "frequently an inaccurate
> assumption"); *Airy Dev. Assocs. v. Sav. Bank of Utica*, 241 A.D. 2d
> 720, 660 N.Y.S.2d 453, 455 (N.Y. App. Div. 1997) (holding that,
> after lender refused to honor its loan commitment, borrower may
> have been entitled to consequential damages of additional interest
> charges until borrower obtained subsequent mortgage from different
> lender).

*Id.* at 1226-27 (footnote omitted).  Our opinion was filed in September 2002.  But

the parties partially settled the case in June 2001.  This settlement covered

payment of the uncontested contract amounts that Grumman had previously

agreed were properly owed to O'Toole, including duplicate housing costs,

unreimbursed moving expenses and closing costs on the San Diego house, Los

Alamos house purchase expenses, expenses for moving from the Los Alamos rental property to the purchased home, and proper gross-up expenses, plus pre-judgment interest from 1996 to 2001. Aplt. App. Vol. II at 645. Thus, the parties went to trial only on the issues of the contested direct and consequential damages issues and on the claim for punitive damages. After hearing the evidence, the district court denied all requested relief.

## II. Analysis

Mr. O'Toole raises three issues on appeal from the district court's June 2003 final order. As the issues are all questions of law, our review is *de novo*. *Dang v. UNUM Life Ins. Co. of Am.*, 175 F.3d 1186, 1189 (10th Cir. 1999). In conducting our review, we accept the district court's purely factual findings unless they are clearly erroneous. *Manning v. United States*, 146 F.3d 808, 812 (10th Cir. 1998).

**A. Capital loss on the San Diego residence.** Mr. O'Toole argues that the district court erred in not awarding capital-loss damages of $12,000 arising from the sale of his San Diego home because Grumman used a "flawed process for setting the sale price." Aplt. Opening Br. at 12. Although Mr. O'Toole did not expressly raise the point, as a preliminary matter, we are concerned that the district court did not make any findings or conclusions regarding this claim. *See* Fed. R. Civ. P. 52(a) (requiring court to find facts and make conclusions after

bench trial); *cf. Prairie Band of Potawatomi Indians v. Pierce*, 253 F.3d 1234, 1245 (10th Cir. 2001) (noting that, "without adequate findings of fact and conclusions of law, appellate review is in general not possible"). We assume that the court denied the claim as part of its general denial of all "[o]ther [d]amage [c]laims." Aplt. App. Vol. IV at 939. We may "consider a district court's failure to make adequate findings of fact as nonreversible error if [we] can ascertain from the record that one party or the other was clearly entitled to judgment in its favor." *Prairie Band of Potawatomi Indians*, 253 F.3d at 1246.

Mr. O'Toole alleges that Grumman forced him to list and sell the property at an average-broker-price-opinion value instead of at 5% above the property's appraised market value, which was contrary to the terms of the relocation contract. As a result of the property being "price[d] so low," argues Mr. O'Toole, he "left at least $12,000 of equity on the table." Aplt. Opening Br. at 14. The record, however, does not support his claim.

First, the relocation contract does not provide for listing the house at 5% above appraised market value; it provides that the house must be listed for an amount "not to exceed 5% above the appraised market value," but only if the employee wished to be paid continuing duplicate housing costs. Aplt. App. Vol. III at 717. Second, the appraised value of the house was $220,000. *See id.* at 824. Five percent above the appraised value was $231,000, but Mr. O'Toole

-6-

listed and sold the house for $243,500, which was more than that amount. Third, Mr. O'Toole, and not Grumman, ultimately set the sales price; Mr. O'Toole's record cites do not support his claim that a Grumman supervisor "told him to" list it at $243,500. And, finally, the relocation contract did not provide for reimbursement for capital losses suffered from a home's short sale, and Mr. O'Toole could have chosen to continue to list his house at a higher price instead of opting to receive continuing duplicate housing costs. Thus, Grumman was entitled to judgment on this claim, and we find no error in the court's failure to award damages associated with it.

B. **Consequential damages.** We reach a different conclusion on the issue of consequential damages, however. The district court denied consequential damages arising from Grumman's admitted failure to pay certain duplicate housing costs because the parties had settled Mr. O'Toole's claim for direct damages related to duplicate housing costs in 2001. Aplt. App. Vol. IV at 938-39. But the parties specifically excepted from that settlement agreement the disputed direct-damage claims and Mr. O'Toole's claims for consequential and punitive damages. *Id.* Vol. II at 645-46. Thus, Mr. O'Toole was not precluded by settlement from continuing to pursue those claims, and Grumman benefitted by stopping further accrual of consequential damages on undisputed claims after it paid the undisputed amounts.

The district court also generally denied consequential damages on its conclusion that Mr. O'Toole "has failed to identify a provision of the [relocation] contract that the defendant breached." *Id.* Vol. IV at 939. But, as we noted in our prior opinion, it is undisputed that Grumman admitted that it had refused to pay certain relocation costs it agreed were covered under the contract, *O'Toole*, 305 F.3d at 1224, and it was "reasonably foreseeable that Grumman's failure to promptly pay or reimburse relocation expenses would result in Mr. O'Toole having to borrow money to pay for those expenses from some source, resulting in extra costs to him," *id.* at 1226-27. These holdings are law of the case. *See Rohrbaugh v. Celotex Corp.*, 53 F.3d 1181, 1183 (10th Cir. 1995). We therefore remand for entry of an award of consequential damages that includes at least an amount reimbursing the penalties paid and interest lost on the funds Mr. O'Toole was forced to withdraw from his retirement account to pay for undisputed relocation costs. And on remand, the court should consider all other claims for consequential damages and make specific findings as to each claim. [1]

---

[1] For example, the district court has determined that Mr. O'Toole was not entitled to a bridge loan because he intended not to purchase a house until he knew whether he would have a job in Los Alamos the following year. The relocation contract clearly contemplated repurchase of a home. While the finding that Mr. O'Toole was not going to purchase a house for approximately a year would preclude consequential damages related to the loss of a reduction in taxes because of mortgage-interest deductions for that year, such preclusion would not affect tax losses suffered in subsequent years until Grumman finally paid the

(continued...)

**C. Punitive damages.** New York has a very stringent standard for recovering punitive damages for breach of contract.

> Punitive damages are available only in those limited circumstances where it is necessary to deter defendant and others like it from engaging in conduct that may be characterized as "gross" and "morally reprehensible," and of "'such wanton dishonesty as to imply a criminal indifference to civil obligations.'" . . . [The essential elements of a punitive damages claim] are: (1) defendant's conduct must be actionable as an independent tort; (2) the tortious conduct must be of [an] egregious nature . . . ; (3) the egregious conduct must be directed to plaintiff; and (4) it must be part of a pattern directed at the public generally. Where a lawsuit has its genesis in the contractual relationship between the parties, the threshold task for a court considering defendant's motion to dismiss a cause of action for punitive damages is to identify a tort independent of the contract.
> . . .
> [A] defendant may be liable in tort when it has breached a duty of reasonable care distinct from its contractual obligations, or when it has engaged in tortious conduct separate and apart from its failure to fulfill its contractual obligations.
> . . .
> [W]here a party is merely seeking to enforce its bargain, a tort claim will not lie.

*New York Univ. v. Continental Ins. Co.*, 662 N.E.2d 763, 767-68 (N.Y. 1995).

Although Mr. O'Toole argues that Grumman was motivated to breach its relocation contract to protect itself from federal audits and penalties, he has not identified a tort independent of the contract directed against him and the public in

---

[1](...continued)
money it admitted it owed and Mr. O'Toole could purchase a house.

general to support his punitive damages claim. We therefore conclude that the district court properly denied his claim for punitive damages.

Accordingly, we affirm in part, reverse in part, and remand for further proceedings consistent with this order and judgment.

Entered for the Court


Monroe G. McKay
Circuit Judge