**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**August 28, 2007**

Elisabeth A. Shumaker
**Clerk of Court**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

JOSEPH O'TOOLE,

      Plaintiff-Appellant,

v.

      No. 05-2174

NORTHROP GRUMMAN CORP.,

      Defendant-Appellee.

---

**Appeal from the United States District Court**
**for the District of New Mexico**
**(D.C. No. Civ-99-1426 LH/RLP)**

---

Alexander A. Wold, Jr., of Alexander Wold & Associates, P.C., Albuquerque, New Mexico, for Plaintiff-Appellant.

Edward Ricco (Scott D. Gordon with him on the brief), of Rodey, Dickason, Sloan, Akin & Robb, P.A., Albuquerque, New Mexico, for Defendant-Appellee.

---

Before **MURPHY**, **SEYMOUR**, and **TYMKOVICH**, Circuit Judges.

---

**SEYMOUR**, Circuit Judge.

This is the third appeal in this case concerning Mr. O'Toole's claims for consequential damages flowing from Northrop Grumman Corporation's breach of a contract to pay his relocation expenses to Los Alamos, New Mexico. *See O'Toole v. Northrop Grumman Corp.*, 305 F.3d 1222, 1225 (10th Cir. 2002) (*O'Toole I*); and *O'Toole v. Northrop Grumman Corp.*, 113 F. App'x 314, 317-19 (10th Cir. 2004) (*O'Toole II*). Our jurisdiction arises under 28 U.S.C. § 1291, and we affirm in part, reverse in part, and remand for further proceedings.

# I

## PROCEDURAL HISTORY

The dispute in this case arose after Northrop Corporation acquired Grumman Aerospace, for whom Mr. O'Toole worked. At the relevant time, Mr. O'Toole was on loan to the federal government to work on a project in San Diego under a four-year "secondment agreement" and Grumman's relocation policy. He subsequently relocated to Los Alamos. Mr. O'Toole sued to recover unpaid relocation expenses and consequential damages flowing from alleged breaches of the Grumman contract. In the last appeal, we held that the district court erred in denying consequential damages. *O'Toole II*, 113 F. App'x at 317-19. We reasoned it was undisputed that Northrop Grumman did not pay certain relocation costs it agreed were due, and it was reasonably foreseeable that Mr. O'Toole would have to get money from some source to pay those expenses "resulting in

-2-

extra costs to him." *Id.* at 319. Noting that these holdings were law of the case, we remanded with directions "for entry of an award of consequential damages that includes at least an amount reimbursing the penalties paid and interest lost on the funds Mr. O'Toole was forced to withdraw from his retirement account to pay for undisputed relocation costs." *Id.* We further directed the district court to "consider all other claims for consequential damages and make specific findings as to each claim." *Id.*

On remand, the district court considered post-trial memoranda on damages from both parties. On May 23, 2005, the court entered a decision granting Mr. O'Toole three awards of consequential damages (and prejudgment interest on two of those awards) and denying his other claims.

## II

### THE DISTRICT COURT'S AWARD

The district court awarded or denied the following claims:

(1) awarded $15,540, plus pre-judgment interest, for withdrawals from the Grumman Savings and Investment Plan (SIP) to pay taxes and penalties on $15,230 Mr. O'Toole borrowed from the SIP to cover unreimbursed moving expenses in 1996;

(2) awarded $13,400, plus pre-judgment interest, for withdrawals from the SIP to pay taxes and penalties on the $13,000 Mr. O'Toole borrowed from the SIP to cover unreimbursed expenses in 1998;

(3) denied damages for the lack of a mortgage interest deduction on his tax return for the time between July 1, 1997, until September 1998;

(4) awarded $2000, without interest, for lost equity in a home purchase;

(5) denied damages for lost vacation pay and moving costs for the moves to the second and third rental homes;

(6) denied damages in excess of $1000 for incidental moving expenses;

(7) denied damages for selling his current home and buying a home he could have afforded if Northrop Grumman had followed its policies correctly;

(8) denied lost earnings, and lost earnings on earnings, on the money Mr. O'Toole withdrew from the SIP to cover unreimbursed relocation expenses;

(9) denied damages for Northrop Grumman's failure to recall him to his prior job in Bethpage, New York;

(10) denied damages for Northrop Grumman's failure to follow its grievance policy;

(11) denied gross-up on damages it awarded;

(12) awarded interest on the damages at the federal reserve rate instead of awarding lost earnings and lost earnings on earnings for withdrawals from the SIP; and

(13) awarded, in total, $31,970 plus costs.

*See* Aplt. Opening Br. at 9-10 (providing citations to district court's memorandum opinion).

Mr. O'Toole contends the district court erred in items (3), (4), (5), (8), (11), (12), and (13) of its award. He argues in addition that the court erred by failing to address his claim for lost earnings on the uncontested damages paid in the partial settlement in 2001, and his claim for penalties and taxes on SIP

-4-

withdrawals made to cover increased taxes because he had no mortgage interest deduction in 1997 and 1998.[1]

# III

# ANALYSIS

We determined in the first appeal that New York law applies to this case. *O'Toole I*, 305 F.3d at 1225. We stated that Mr. O'Toole is entitled to damages that will put him in the same economic position in which he would have been if Northrop Grumman had not breached the contract with him, including any foreseeable economic injury resulting from the breach and the costs of mitigation. *See id.* at 1226. We review the district court's findings on damages for clear error. S*ee Easley v. Cromartie*, 532 U.S. 234, 242 (2001); *Furr v. AT&T Tech., Inc.*, 824 F.2d 1537, 1547 (10th Cir.1987). To reverse under this standard requires that, based on the entire evidence, we have a "definite and firm conviction that a mistake has been committed." *Easley*, 532 U.S. at 242. We review the district court's legal conclusions de novo. *Dang v. UNUM Life Ins. Co. of Am.*, 175 F.3d 1186, 1189 (10th Cir. 1999).

---

[1]     Based on the arguments in his opening brief, Mr. O'Toole has abandoned four claims, items (6), (7), (9), and (10) from the numbered list of the district court's awards and denials set out above. *See, e.g.,* Aplt. Opening Br. at 10. In addition, Mr. O'Toole no longer claims he is entitled to consequential damages based on renting for the first year he was in Los Alamos, from approximately mid-1996 to mid-1997. *See* Aplt. Reply Br. at 12.

Mr. O'Toole does not dispute the amounts the district court awarded to reimburse him for the taxes and penalties he paid on withdrawals from his retirement account to pay undisputed relocation costs. In 1996, $15,540 was withdrawn to pay taxes and penalties, as shown in item (1) of the district court's order, and in 1998, $13,400 was withdrawn to pay taxes and penalties, as shown in item (2). Rather, as explained below, Mr. O'Toole disputes the district court's failure to award lost earnings on these amounts, plus earnings on earnings, along with other items of consequential damages.

## A. Moving Expenses and the Value of Vacation Time Used to Move (Item 5)

We affirm the denial of Mr. O'Toole's claim for moving expenses. The district court denied this claim because Mr. O'Toole did not hire movers or pay a moving fee to anybody, and he has provided no legal authority to justify an award for the value of his own labor.

We also affirm the denial of Mr. O'Toole's claim for the value of vacation time he used to move twice between rental houses in Los Alamos. Although the district court erroneously denied relief because Mr. O'Toole no longer worked for Northrop Grumman at the time he made these moves, Mr. O'Toole did not contend his vacation time had a cash value or cite any legal authority showing he can claim his salary as the value of his vacation time.

B. <u>Lost Mortgage Interest Deduction (Item 3)</u>

The district court denied Mr. O'Toole's claim for damages for the lack of a mortgage interest deduction on his tax returns for the time between July 1, 1997, until September 1998. We remand this claim for reconsideration.

Mr. O'Toole argued that he was entitled to a lost mortgage interest deduction because Northrop Grumman's failure to pay his relocation costs prevented him from buying a house in Los Alamos before September 1998. He asserted that the lack of an interest deduction raised his taxes, which caused him to withdraw funds from his SIP to pay his increased taxes in 1997 and 1998, and incur taxes and penalties on the SIP withdrawal. He also claims we directed that such an award be made, Aplt. Opening Br. at 12, but we actually held only that such a claim was not foreclosed and that the district court should consider it. *O'Toole II*, 113 F. App'x at 319 & n.1. Mr. O'Toole presented tax returns for 1996, 1998, and 2000 in support of these claims.

The district court agreed that Mr. O'Toole "sustained some damage by way of having to pay more income tax than he otherwise would have paid commencing in mid-1997." Aplt. App., vol. V at 992. The court concluded, however, that it would be "virtually impossible" to calculate the loss due to not having a mortgage interest deduction. *Id.* The court stated that because Mr. O'Toole did not itemize

in 1998 and did not provide a 1997 return, it was unclear what his *other* deductions would have been. *See id.*

Mr. O'Toole argues that he provided sufficient evidence to support an award for his lost mortgage interest deduction. We agree this claim is not speculative, assuming Mr. O'Toole seeks a minimum award. He correctly states that the tax savings on a mortgage interest deduction are determined by his federal and state tax rates and the amount of mortgage interest claimed, not by the amount of his other deductions. *See* Aplt. Opening Br. at 17-18. The evidence could support an award, for example, as long as the mortgage interest he would have been able to claim on his federal taxes exceeded the standard deduction, and as long as the calculation of damages included only the amount of an itemized interest deduction that would have exceeded the standard deduction.

Mr. O'Toole testified that $1500 a month was a reasonable figure to assume would have gone to interest payments, based on the rent he had been paying in Los Alamos. *See* Aplt. App., vol. 1A at 169-71. He showed that this is less mortgage interest than he actually paid in 1996 on his house in California or paid in the year 2000 on his house in Los Alamos. Aplt. Opening Br. at 18 & n.77 (citing tax returns at Aplt. App., vol. II at 473, 498). Mr. O'Toole's present calculation of the resulting loss does not match his testimony at trial. *Compare* Aplt. Opening Br. at 18 *with* Aplt. App., vol. 1A at 169-71. More importantly,

however, Mr. O'Toole did not subtract the amount of the standard deduction, which he could have claimed on his taxes in any event. For this reason, his claimed loss is inflated. Nevertheless, Mr. O'Toole's evidence brings into question the district court's finding that his claim was "speculative" because he did not prove what his *other* deductions would have been. *See* Aplt. App., vol. V at 992.

The district court determined Mr. O'Toole would be entitled, at most, to damages for a lost mortgage interest deduction for six months in 1997 and nine months in 1998. *See id.* The court did not state, however, whether it accepted or rejected Mr. O'Toole's testimony as to the amount of interest he would have paid if he had purchased a house earlier. Accepting that Mr. O'Toole would have paid $1500 per month in interest on a mortgage instead of spending it on rent, *see* Aplt. App., vol. 1A at 169-71, he would have spent $9000 in interest over six months and $12,000 in interest over nine months. Comparing these amounts to the federal standard tax deduction of $7100, *see* Aplt. App. vol. V at 992, Mr. O'Toole clearly would have benefitted financially by itemizing deductions based on mortgage interest alone for six months in 1997 and nine months in 1998. This is true without regard to other deductible expenses. Mr. O'Toole's minimum tax cost can be calculated using his federal and state tax rates. However, Mr. O'Toole also testified that if Northrop Grumman had timely paid his relocation

costs, he would have bought a more expensive house than he ultimately did, and he would have put down 20% instead of the 5% he actually put down when he bought his house in Los Alamos in late 1998. *See* Aplt. App., vol. 1A at 169-72; Aplt. Opening Br. at 9. A higher loan-to-value ratio may have increased or decreased the amount of interest he would have paid, depending on the cost of the house.

Because a minimum award is supportable by the evidence, we cannot affirm the district court's denial on the basis that *any* award would have been speculative. We conclude that Mr. O'Toole's claim for a lost mortgage interest deduction should be reconsidered, and therefore that his claim for the taxes and penalties on the SIP withdrawal made to cover these taxes should also be reconsidered. The district court has already determined that taxes and penalties constituted 51% of SIP withdrawals. *See* Aplt. App., vol. V at 990-91. We remand for further necessary fact finding on this claim.

C. Lost Earnings and Lost Earnings on Earnings (Item 8)

Because Mr. O'Toole withdrew money from his retirement account, he lost the earnings that his money would have accumulated if it had remained in his stock funds. Consequently, he seeks lost earnings on his stock funds from the date of the SIP withdrawals in 1996 and 1998 until Northrop Grumman paid undisputed relocation expenses in June 2001, and lost earnings on unpaid earnings

after that date until the date they are paid. The district court considered whether to award lost earnings as an item of consequential damages and declined to do so. *See id.* at 995-97. The court denied earnings based on partially faulty reasoning and without addressing all of Mr. O'Toole's arguments. Because we conclude Mr. O'Toole is entitled to an award of lost earnings and earnings on earnings, we remand this claim for reconsideration as well.

The district court denied lost earnings for three reasons, all of them erroneous. *See id.* at 995-97. First, the court said Mr. O'Toole withdrew much more money than he needed for unpaid relocation costs. *Id.* at 996. Mr. O'Toole has shown, however, that the amounts he withdrew from the SIP in 1996 and in 1998 had to be much more than just the amount needed to pay his unpaid relocation costs in order to pay the penalties and taxes on the withdrawn funds, as this more than doubled the total amount he needed to withdraw. Indeed, the awards the district court made reflected what Mr. O'Toole was forced to withdraw to pay taxes and penalties on withdrawals, as well as the withdrawals necessary to pay undisputed relocation costs. *See id.* at 989-991. Mr. O'Toole claimed he had to withdraw funds to pay his increased taxes because he had no mortgage interest deduction for nearly two years, to pay for three moves within Los Alamos (from rental house to rental house to rental house to purchased house), and to cover the taxes and penalties on the additional withdrawals from the SIPs.

-11-

Second, the district court said the fund results showed earnings in some years but losses in others. *Id.* at 996. Mr. O'Toole has clearly shown, however, that the court was looking at the wrong fund results. Grumman and later Northrop Grumman had several investment funds for employees. Mr. O'Toole testified that he kept his money in two funds, the U.S. Equity Fund and the Equity Growth (Magellan) Fund. Aplt. App., vol. 1A at 179. He points to evidence showing that these two funds had positive earnings each year between 1990 and 1999. *See id.*, vol. II at 518. Based on the district court's comments about losses in the fund, the court must have looked at the results for an entirely different fund, the Northrop Grumman Fund, because it is the only fund that had losses in any years up to 1999. *See id.* at 519. The district court's stated reason is therefore clearly erroneous.

Third, the court said that Mr. O'Toole had no evidence of fund results after 1999, and there was no support for his testimony that 12% was a fair approximation of earnings. Aplt. App., vol. V at 996. But the district court should have taken judicial notice under Federal Rule of Evidence 201(b)(2) of historical retirement fund earnings on Northrop Grumman's website, as Mr. O'Toole requested in his post-trial memorandum on damages. Aplt. Opening Br. at 14-15; Aplt. App., vol. V at 941-58.

Federal Rule of Evidence 201(b) states: "A judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Mr. O'Toole's request falls under (b)(2). As he correctly asserts, Rule 201(d) makes the rule mandatory when it applies: "A court shall take judicial notice if requested by a party and supplied with the necessary information." We review the district court's decision not to take judicial notice for abuse of discretion. *See Lozano v. Ashcroft*, 258 F.3d 1160, 1164 (10th Cir. 2001).

Rule 201 "governs only judicial notice of adjudicative facts." Fed. R. Evid. 201(a). "'Adjudicative facts are simply the facts of the particular case.'" *United States v. Wolny*, 133 F.3d 758, 764 (10th Cir. 1998) (quoting advisory committee notes to Rule 201). Mr. O'Toole asked the district court to take judicial notice of the actual earnings history on Northrop Grumman's website and gave the complete address for the page to which Northrop Grumman's quarterly reports are linked. Aplt. App., vol. V at 953 n.60. That page is still found at http://benefits.northropgrumman.com/savings/sip_update/. Mr. O'Toole contended that the information should not be subject to dispute by Northrop

Grumman because Northrop Grumman created it. Thus, Mr. O'Toole addressed all the factors relevant to the application of Rule 201(b)(2).

Northrop Grumman's arguments for not taking judicial notice are unpersuasive. It did not explain in the district court, *see* Aplt. App., vol. V at 968, and has not explained to us, why its own website's posting of historical retirement fund earnings is unreliable. Moreover, Northrop Grumman could have asked the district court for a hearing under Rule 201(e), but did not do so. In short, Northrop Grumman's failure to dispute its own information, contributes to its indisputability. *See Hennessy v. Penril Datacomm Networks, Inc.*, 69 F.3d 1344, 1354 (7th Cir. 1995) ("In order for a fact to be judicially noticed, indisputability is a prerequisite.").

It is not uncommon for courts to take judicial notice of factual information found on the world wide web. *See City of Monroe Employees Ret. Sys. v. Bridgestone Corp.*, 399 F.3d 651,655 n.1 (6th Cir. 2005) (taking judicial notice of a term defined on the website of the National Association of Securities Dealers, Inc.); *Schaffer v. Clinton*, 240 F.3d 878, 885 n.8 (10th Cir. 2001) (taking judicial notice of information found in a political reference almanac and citing to the almanac's website). *Cf. Grimes Navigant Consulting, Inc.*, 185 F. Supp. 2d 906, 913 (N.D. Ill. 2002) (taking judicial notice of published stock prices found on the world wide web). Under the circumstances of this case, we conclude the district

court abused its discretion by failing to take judicial notice of the actual earnings history provided by Northrop Gruman on the internet as required by Rule 201(d).

Mr. O'Toole testified that he invested in only two funds. He set out his calculations to show that he would have made money, despite losses in some years, if his money had remained in the U.S. Equity Fund, the one fund in which he was invested that is still offered by Northrop Grumman. *See* Aplt. Opening Br. at 29 (relying on Plaintiff Ex. 11, p.518 and Northrop Grumman website). It seems reasonable to assume that Mr. O'Toole would have left his money invested in this fund after the other fund in which he was invested was discontinued. These same calculations support Mr. O'Toole's assertion that 12% may be a reasonable figure to use as average gain for all years. *See id.* at 29-30.

We remand this claim so that the district court can determine an award of earnings and earnings on the unpaid earnings.[2] The court should take judicial notice of proof of earnings after 1999 from Northrop Grumman's website, and should consider whether 12% is a reasonable average for all years for lost

_____

[2] Because Mr. O'Toole will be made whole by the award of earnings and earnings on earnings, he is not entitled to prejudgment interest on these portions of his judgment. Indeed, Mr. O'Toole only asked for prejudgment interest in the alternative to earnings and earnings on earnings. Aplt. Opening Br. at 39-43.

earnings and earnings on earnings and whether Mr. O'Toole would have left his money invested in this fund as he asserted.

D.  Claim for Prejudgment Interest on Award for Lost Equity (Item 4)

As we have noted, the district court awarded Mr. O'Toole $2000 to represent the amount of equity he failed to accrue because he was unable to buy a house for nearly two years after he moved to Los Alamos.  The court stated that the lost equity award would not carry prejudgment interest, but did not explain why not.  Aplt. App., vol. V at 993.  Mr. O'Toole listed the lack of interest on his lost equity award as an issue on appeal, but he makes only a summary argument for interest on this award of lost principal/equity.  Aplt. Opening Brief at 43, 44.

Prejudgment interest is compensatory in nature, repaying the plaintiff for the lost use of principal.  *Rolf v. Blyth, Eastman Dillon & Co.*, 637 F.2d 77, 87 (2d Cir. 1980).  The district court appears to have determined it was Northrop Grumman's fault that Mr. O'Toole could not buy a house earlier than he did, *see* Aplt. App., vol. V at 992, and it is lost principal that the award of lost equity represents.  Northrop Grumman contends the claim is unliquidated and interest was therefore within the district court's discretion under New York law, citing an unpublished case in support of its argument.  *Wickham Contracting Co. v. Local Union No. 3, Int'l Bhd. of Elec. Workers*, No. 74 CIV. 3248 (MBM), 1991 WL

84595 (S.D.N.Y. May 15, 1991), *aff'd*, 955 F.2d 831 (2d Cir. 1992). Even were we to consider the case, however, Northrop Grumman admits that the decision to award or deny interest should be "guided by 'fundamental considerations of fairness.'" *Id.* at *1 (quoting *Rolf*, 637 F.2d at 87). Because the district court gave no explanation for denying prejudgment interest, it is difficult to review its exercise of discretion. *See Foman v. Davis*, 371 U.S. 178, 182 (1962); *ARW Exploration Corp. v. Aguirre*, 45 F.3d 1455, 1459 (10th Cir. 1995).

Mr. O'Toole argues in his reply brief that this claim was liquidated, citing Exhibit 15, a mortgage payment summary for 2003 for Mr. O'Toole's house in Los Alamos. Aplt. Reply Br. at 20 (citing Aplt. App., vol. II at 520-26). The district court expressly relied on Exhibit 15, *see* Aplt. App., vol. V at 993, and it therefore appears the court used Mr. O'Toole's actual mortgage payments to approximate the amount of money he would have paid to principal if he had bought a house earlier. The district court's findings were not explicit, however. *See id.* We therefore remand this claim for further elaboration.

E. Gross-up (Item 11)

"Gross-up" is the name given to an increase in the damage award to offset the taxes that will be payable on the award. The district court summarily denied gross-up on Mr. O'Toole's remaining consequential damages claims because he testified that he was not entitled to gross-up on consequential damages. The

-17-

district court's decision appears to stem from a misunderstanding or mischaracterization of Mr. O'Toole's trial testimony regarding whether he believed he was entitled to gross-up on consequential damages. Aplt. App., vol. V at 997 (citing Aplt. App., vol. 1A at 319).

The questioning at trial appears to have been aimed at making a distinction between relocation expenses (direct damages), which were entitled to gross-up under the contract, and consequential damages, for which gross-up was not specifically mentioned by either contract. The district court did not rely on such a distinction, however. Its reason for denying gross-up resulted from a failure to carefully review Mr. O'Toole's testimony and was therefore clearly erroneous.

Mr. O'Toole stresses two points on appeal: (1) consequential damages are taxable; and (2) this court has already held that New York law requires he be put back in the same economic position as he would have been in if Northrop Grumman had not breached the contract. Aplt. Opening Br. at 36-38 (citing *O'Toole I*, 305 F.3d at 1226). For these reasons, Mr. O'Toole contends his consequential damages must be grossed-up so that his move to Los Alamos will be made financially neutral to him, and his argument has some force.

Northrop Grumman contends the district court did not err in its refusal to gross-up the consequential damages. Northrop Grumman initially conceded in its brief that Mr. O'Toole was covered by Grumman's field assignment policy, not

Northrop Grumman's relocation policy. Aple. Br. at 1-2 (citing Aplt. App., vol. III at 695). Theoretically, the Grumman policy provides for gross-up on consequential damages in that it was Grumman's policy to make relocations financially neutral to employees. Aplt. App., vol. I at 35-36; vol. III at 698 ("[T]hese policies are intended to assure that all . . . personnel receive equitable compensation for expenses incident to, or incurred on, a Field Assignment."). Northrop Grumman later argues that its own relocation policy provided for gross-up on direct damages, but not for gross-up on consequential damages and therefore, Mr. O'Toole is not entitled to gross-up on consequential damages. Aple. Br. at 27-28. But Northrop Grumman's argument based on its own relocation policy contradicts its earlier concession that Mr. O'Toole was covered by the Grumman policy, *see id.* at 1-2 (citing Aplt. App., vol. III at 695), as does its concession at trial that such was the case. *See* Aplt. App., vol. IB at 377-78.

Northrop Grumman points out that courts generally do not increase damage awards to offset the effect of taxes. *See Medcom Holding Co. v. Baxter Travenol Labs., Inc.*, 106 F.3d 1388, 1404 (7th Cir. 1997). But it admits that courts do gross-up damage awards "when a taxable award compensates a plaintiff for lost monies that would not have been taxable." *Home Sav. of Am. v. United States*, 399 F.3d 1341, 1356 (Fed. Cir. 2005). Northrop Grumman fails to go through the district court's damage awards to show how these principles apply to the facts of

this case, and we are unable to make this determination. This issue is therefore remanded for reconsideration in order that the parties can explain to the district court whether Mr. O'Toole's damage awards are taxable and whether they replace monies that would not have been taxable. Given that Mr. O'Toole was awarded both earnings and earnings on earnings, as well as reimbursement for funds withdrawn from his retirement account to pay taxes and penalties on funds withdrawn to pay undisputed relocation costs, there may well be some significant parsing out regarding what should and should not be grossed up. The principles set forth in *Med-Com* and *Home Savings of America* should guide the district court's determinations regarding same.

## IV

## CONCLUSION

The judgment of the district court is **AFFIRMED** in part, **REVERSED** in part, and **REMANDED** for further proceedings consistent with this decision.[3] On remand, the district court should make specific and detailed findings regarding the matters left open by our opinion.

---

[3]  To the extent that Mr. O'Toole seeks costs in this matter, he should file an appropriate motion under Fed. R. App. P. 39.

-20-