**Opinion issued October 29, 2015**



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-14-01007-CV

———————————

**ALLAN R. AVERY, Appellant**

**V.**

**LPP MORTGAGE, LTD., Appellee**

---

**On Appeal from the 127th District Court**
**Harris County, Texas**
**Trial Court Case No. 2011-65958**

---

## MEMORANDUM OPINION

Appellant, Allan R. Avery, appeals the trial court's grant of summary judgment in favor of appellee, LPP Mortgage, Ltd. [LPP], on two notes guaranteed by Avery. We affirm in part and reverse and remand in part.

## BACKGROUND

On June 26, 2006, Centamark Luxury Homes, Ltd. [Centamark] executed two promissory notes to New South Federal Savings Bank [New South]. Note 1 was in the amount of $1,692,750.00 and Note 2 was in the amount of $775,600. On the same day, Avery executed personal guarantees of the notes to New South.

In December 2009, New South was closed by the Office of Thrift Supervision, and the Federal Deposit Insurance Corporation [FDIC] was appointed as receiver. The FDIC sold a portion of New South's assets, including the notes and guarantees, to Beal Bank. Beal Bank, in turn, transferred the notes and guarantees to LPP.

On October 31, 2011, LPP filed suit against Avery, alleging breach of the notes and their accompanying guarantees. On January 15, 2011, LPP filed its Second Amended Motion for Summary Judgment, which the trial court granted. This appeal follows.

## PROPRIETY OF SUMMARY JUDGMENT

On appeal, Avery contends the trial court erred in granting summary judgment (1) after failing to sustain Avery's objections to LPP's summary judgment evidence; (2) because LPP's summary judgment evidence is insufficient to establish its capacity to sue Avery; (3) because the summary judgment evidence

is insufficient to support an award of attorney's fees to LPP; and (4) because the summary judgment evidence is insufficient to establish LPP's damages.

### *Standard of Review*

We review de novo the trial court's ruling on a summary judgment motion. *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009). To prevail on a traditional motion for summary judgment, a movant must establish that no genuine issues of material fact exist and that it is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c); *Mann Frankfort*, 289 S.W.3d at 848. We review all the evidence in the light most favorable to the nonmovant, crediting favorable evidence if reasonable jurors could do so, and disregarding contrary evidence unless reasonable jurors could not. *Mann Frankfort*, 289 S.W.3d at 848. We must indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *Sw. Elec. Power Co. v. Grant*, 73 S.W.3d 211, 215 (Tex. 2002). If the movant meets its burden, then the burden shifts to the nonmovant to raise a genuine issue of material fact precluding summary judgment. *See Centeq Realty, Inc. v. Siegler*, 899 S.W.2d 195, 197 (Tex. 1995).

### *Evidentiary Objections*

In his first issue, Avery contends the trial court erred by not sustaining his objections to the affidavit of Tom Martin, which was attached to LPP's motion for

3

summary judgment.  Specifically, Avery objects to the following assertions in Martin's affidavit:

1. "CLMG Corp. is the authorized loan servicer for LPP Mortgage Ltd."
2. "the Office of Thrift Supervision ordered the closing of New South . . . and the Federal Deposit Insurance Corporation ("FDIC") was appointed Receiver for New South"
3. "LPP Mortgage Ltd is the legal owner and holder of Note 1"
4. "LPP Mortgage Ltd. is the legal owner and holder of Note 2"

Although not clear from his brief, to the extent that Avery is complaining about defects in the form of the affidavit, his complaints are waived because he did not obtain written ruling on his objections.  *Dolcefino v. Randolph*, 19 S.W.3d 906, 925–27 (Tex. App.—Houston [14th Dist.] 2000, pet. denied).  However, to the extent that Avery is complaining that these statements were conclusory, such objection is a defect as to the substance of the affidavit, and can be made at any time.  *McMahan v. Greenwood*, 108 S.W.3d 467, 498 (Tex. App.—Houston [14th Dist.] 2003, pet. denied); *Choctaw Props., L.L.C. v. Aledo I.S.D.*, 127 S.W.3d 235, 241 (Tex. App.—Waco 2003, no pet.) (holding that conclusory affidavit is substantively defective.).

"A conclusory statement is one that does not provide the underlying facts to support the conclusion." *Choctaw Props., L.L.C.*, 127 S.W.3d at 242 (quoting *Rodriguez v. Wal–Mart Stores, Inc.*, 52 S.W.3d 814, 823 (Tex. App.—San Antonio 2001), *rev'd on other grounds*, 92 S.W.3d 502 (Tex. 2002)).  As such, a conclusory

4

statement is not proper summary judgment proof.  *Rizkallah v. Conner*, 952 S.W.2d 580, 587 (Tex. App.—Houston [1st Dist.] 1997, no writ). Thus, we examine the summary judgment evidence provided in support of the alleged conclusory statements.

 *1. "CLMG Corp. is the authorized loan servicer for LPP Mortgage Ltd."*

Avery argues that there is no personal knowledge or evidentiary support for the above-referenced statement by Martin.  However, this sentence of the affidavit provides in its entirety:

> I [Tom Martin] am, and at all time material hereto, have been employed by CLMG Corp. as a Portfolio Manager.  In that position, I am aware that CLMG Corp. is the authorized loan servicer for LPP Mortgage Ltd. (referred to as "LPP"), and custodian of records relating to the loans at issue discussed below.  I am authorized to make this affidavit on behalf of CLMG Corp., and on behalf of LPP.

When, as here, an affiant's summary-judgment affidavit contains testimony that identifies his status as a record's custodian and establishes his relationship with the facts of the case in a manner sufficient to demonstrate the facts at issue, the personal knowledge requirement for summary judgment affidavits may be satisfied. *See Kyle v. Countrywide Home Loans, Inc.*, 232 S.W.3d 355, 360–61 (Tex. App.—Dallas 2007, pet. denied) (holding affiant's testimony that she was both a foreclosure specialist and custodian of records for mortgagee with respect to mortgagor's loan was sufficient to identify the custodian's position and responsibilities, meeting personal knowledge requirement); *Stucki v. Noble*, 963

S.W.2d 776, 780 (Tex. App.—San Antonio 1998, pet. denied) (holding personal-knowledge requirement was satisfied when affidavit sufficiently described relationship between affiant and the case so that it may have been reasonably assumed that she had personal knowledge of facts stated in her affidavit).

Here, Martin's affidavit identified himself as a Portfolio Manager for CLMG, and, because of that position, as well as his position as its custodian of records, he was aware that CLMG Corp. was the authorized loan servicer for LPP. This information was sufficient to demonstrate Martin's personal knowledge of the challenged assertion.

> 2. *"the Office of Thrift Supervision ordered the closing of New South . . . and the Federal Deposit Insurance Corporation ("FDIC") was appointed Receiver for New South"*

In his affidavit, Martin states that his knowledge regarding the above-referenced statements was based on several documents that were attached to his affidavit. Specifically, Exhibit A to Martin's affidavit is what Martin describes as a "true and correct copy of the Notice . . . that on December 18, 2009, the FDIC as Receiver for New South sold certain assets to Beal Bank and all rights arising from those assets[,]." and is a printout of a press release from the FDIC website. It is from the same website as Exhibit 2 of Victor C. Serafino's[1] affidavit, which was

---

[1] Serafino was an attorney for LPP at trial, and his affidavit explains how many of the documents filed in support of LPP's motion for summary judgment were accessed through government websites.

also attached as LPP's summary judgment evidence. In his affidavit, Serafino explains how he accessed the FDIC website and provides a URL address for the same.

Exhibit B to Martin's affidavit is what he alleges is a "true and correct copy of the redacted Purchase and Assumption Agreement[.]" Exhibit B to Martin's affidavit is the same as Exhibit 3 of Serafino's affidavit, and Serafino explains that he obtained the Purchase and Assumption Agreement by accessing the FDIC's website, and again he provides a URL address for the same.

On appeal, Avery argues that "[n]either Exhibit "A" nor Exhibit "B" [to Martin's affidavit] were properly identified or authenticated[,]" and, as such, have no evidentiary value. He also objects to Serafino's affidavit, particularly Exhibits 1, 2, 3, and 4—all printouts from the FDIC's website—for the same reason.

We begin by noting that a properly authenticated affidavit, such as those by Martin and Serafino, in combination with an unauthenticated attachment, is a defect in form and can be waived. *Kotzur v. Kelly*, 791 S.W.2d 254, 256 (Tex. App.—Corpus Christi 1990, no writ); *Oglesby v. Land Title Co. of Dallas*, No. 05-91-00076-CV, 1992 WL 35820, *3 (Tex. App.—Dallas Feb. 27, 1992, no writ) (not designated for publication). Because Avery did not obtain a ruling on this objection as to form, his complaint about the lack of authentication of the exhibits is waived. *See Dolcefino*, 19 S.W.3d at 925–27.

Additionally, we note that the documents in both challenged exhibits were obtained from the FDIC's website. Texas Rule of Evidence 902(5) dictates that "[b]ooks, pamphlets, or other publications purporting to be issued by public authority" are self-authenticating. *Id.* Thus, under Rule 902(5), documents printed from government websites are self-authenticating. *Williams Farms Produce Sales, Inc. v. R & G Produce Co.*, 443 S.W.3d 250, 259 (Tex. App.—Corpus Christi 2014, no pet.). "[B]ecause records and information located on government websites are self-authenticating under Federal Rule of Evidence 902, [a] court may take judicial notice of them." *Newton v. Holland*, 2014 WL 318567, at *1 n.1 (E.D. Ky, Jan. 29, 2014) (mem. op.). For the same reason, the Fifth Circuit has determined that courts may take judicial notice of governmental websites. *See Kitty Hawk Aircargo, Inc. v. Chao*, 418 F.3d 453, 457 (5th Cir. 2005) (taking judicial notice of approval by the National Mediation Board published on the agency's website); *Coleman v. Dretke*, 409 F.3d 665, 667 (5th Cir. 2005) (per curiam) (taking judicial notice of Texas agency's website); *see also O'Toole v. Northrop Grumman Corp.*, 499 F.3d 1218, 2007 WL 2421754, at *6 (10th Cir. Aug. 28, 2007) ("It is not uncommon for courts to take judicial notice of factual information found on the world wide web.") (citations omitted); *Denius v. Dunlap*, 330 F.3d 919, 926 (7th Cir. 2003) (taking judicial notice of information on official government website pursuant to Rule 201). Federal courts have taken judicial

notice of other courts' websites. *See, e.g.*, *Graham v. Smith*, 292 F. Supp. 153, 155 n.2 (D. Me. 2003) (taking judicial notice of pleadings located on the internet); *Anderson v. Cal. Bd. of Prison Terms*, No. CIV-04-1172, 2007 WL 404900, at *1 (E.D. Cal. Feb. 2, 2007) (unpublished) (taking judicial notice of records from official website for California Appellate Courts); *Collier v. Dretke*, No. Civ.A 4:05CV379Y, 2005 WL 1429738, at *1 n.5 (N.D. Tex. June 17, 2005) (unpublished) ("The Court . . . takes judicial notice of the disposition of Collier's seven writ applications in the Texas Court of Criminal Appeals through a search on its website."); *Booker v. Taft*, No. 7:03-CV-263-R, 2004 WL 1253410, at *1 (N.D. Tex. June 8, 2004) (unpublished) (taking judicial notice that petitioner's state habeas petition remained pending based on the Texas Second Court of Appeals' website). Indeed, federal courts have judicially noticed purchase and assumption agreements because they were publicly available through the FDIC's website. *Pascal v. JPMorgan Chase Bank, NA*, 2013 WL 878588, at *4 fn.4 (S.D. N.Y., Mar. 11, 2013); *see also Lemperle v. Washington Mut. Bank*, No. 10cv1550–MMA(POR), 2010 WL 3958729, at *3 (S.D. Cal. Oct. 7, 2010) (taking judicial notice of order from the Office of Thrift Supervision closing bank and appointing the FDIC as Receiver, and the Purchase and Assumption Agreement entered between the FDIC and purchasing bank because "government reports and publications, including information on the Department of the Treasury and the

9

FDIC's official websites is judicially noticeable"); *Yetiv v. Chase Home Fin., LLC*, 2012 WL 112597, at *4 n.1 (S.D. Tex. Jan. 11, 2012) (holding that information on FDIC's official website was subject to judicial notice).

Because the record demonstrates that the exhibits that Avery contends were not properly authenticated are, in fact, self-authenticating documents accessed through a government website, the trial court could have properly considered them as summary judgment evidence.

> 3.  *"LPP Mortgage Ltd is the legal owner and holder of Note 1"*
> 4.  *"LPP Mortgage Ltd. is the legal owner and holder of Note 2"*

Avery also complains that Martin's statements about LPP being the "legal owner and holder" of the notes are conclusory. Specifically, Avery contends that the trial court should have struck the allonges, which were attached as Exhibits C and E to Martin's affidavit, and the limited powers of attorney, which were attached as Exhibits G, I, and J, because the allonges and limited powers of attorney were not timely produced during discovery.

The record shows that Avery requested the documents on August 3, 2012, and the trial court granted his motion to compel on December 4, 2012. Avery filed a second motion to compel, which the trial court denied without explanation on February 26, 2013. On March 12, 2013, LPP produced the allonges and limited powers of attorney in its response to Avery's no-evidence motion for summary judgment. Ten months later, LPP included the allonges and limited powers of

10

attorney in its Second Amended Motion for Summary Judgment, i.e., the motion at issue in this appeal. Avery contends the trial court should have struck the allonges and limited powers of attorney from LPP's summary judgment evidence.

Rule 193.6 of the Texas Rules of Civil Procedure provides:

(a) *Exclusion of Evidence and Exceptions*. A party who fails to make, amend, or supplement a discovery response in a timely manner may not introduce in evidence the material or information that was not timely disclosed, or offer the testimony of a witness (other than a named party), who was not timely identified, unless the court finds that:

(1) there was good cause for the failure to timely make, amend or supplement the discovery response; or

(2) the failure to timely make, amend or supplement the discovery response will not unfairly surprise or unfairly prejudice the other parties.

(b) *Burden of Establishing Exception*. The burden of establishing good cause or the lack of unfair surprise or unfair prejudice is on the party seeking to introduce the evidence or call the witness. A finding of good cause or the lack of unfair prejudice must be supported by the record.

(c) *Continuance*. Even if the party seeking to introduce the evidence or call the witness fails to carry the burden under paragraph (b), the court may grant a continuance or temporarily postpone the trial to allow a response to be made amended, or supplemented, and to allow opposing parties to conduct discovery regarding any new information presented by that response.

TEX. R. CIV. P. 193.6. Rule 193.6's exclusion provision is automatic unless one of the exceptions applies. *See Fort Brown Villas III Condo. Ass'n v. Gillenwater*, 285 S.W.3d 879, 881 (Tex. 2009) While the trial court has discretion to determine

11

whether a party has met its burden under this rule, a finding of good cause or of the lack of unfair surprise or unfair prejudice must be supported by the record. *Id.*; *Tex. Mun. League Intergovernmental Risk Pool v. Burns*, 209 S.W.3d 806, 817 (Tex. App.—Fort Worth 2006, no pet.).

By not granting Avery's objection and motion to strike the challenged evidence, the trial court necessarily found either (1) good cause, or (2) no unfair surprise or prejudice, and we will review the record to determine whether the record supports that implied finding. *See Lopez v. La Madeleine of Tex., Inc.*, 200 S.W.3d 854, 857 (Tex. App.—Dallas 2006, no pet.) (reviewing evidentiary support for implied finding of no unfair surprise or prejudice).

Here, the record shows, and Avery concedes in his brief, that he obtained the challenged documents on March 12, 2013—over 10 months before LPP filed its Second Amended Motion for Summary Judgment on January 15, 2014. As such, there was sufficient evidence in the record for the trial court to conclude that Avery suffered no unfair surprise or prejudice when the same documents were included in LPP's Second Amended Motion for Summary Judgment. Thus, the trial court did not abuse its discretion by failing to strike the allonges and limited powers of attorney.

Having found no abuse of discretion in the trial court's failure to sustain Avery's evidentiary objections, we conclude that the objected-to documents

12

provide the necessary factual support such that Martin's statements are not conclusory. We overrule Avery's first issue on appeal.

### Sufficiency of Evidence Relating to Capacity

In his second issue on appeal, Avery argues that LPP failed to carry its summary judgment burden to prove that "(1) New South Federal Savings Bank went into receivership; (2) the FDIC was appointed as receiver for the New South Federal Savings Banks; and (3) the two (2) promissory note(s) on which [LPP's] claim for breach of contract is based were properly assigned, negotiated, and/or transferred through [an] unbroken chain of title to [LPP]." Specifically, Avery once again argues that, absent the documents challenged in its first issue on appeal, there is no evidence to show LPP's capacity to bring suit against Avery.

For the same reasons given in overruling issue one, we also overrule issue two.

### Sufficiency of Evidence Relating to Attorney's Fees

In support of its claim for attorney's fees under TEX. CIV. PRAC. & REM. CODE ANN. § 38.001 (West 2015), LPP submitted the affidavit of Victor C. Serafino, who averred:

> 1.    "My name is Victor C. Serafino. I am over twenty-one (21) years of age, have never been convicted of a felony or crime involving moral turpitude, and am fully qualified to make this affidavit. I have personal knowledge of all the facts recited herein, and those facts are true and correct.

13

2.    "I am a partner with the firm of Vincent, Lopez, Serafino & Jenevein, P.C., which represents [LPP] in the above-captioned litigation.

3.    "I am licensed to practice law by the Supreme Court of Texas and have been since 1986.  I have practiced in the area of commercial litigation and other litigation since 1986.  I am familiar with the reasonable, usual and customary attorney's fees charged in this county in litigation similar to this lawsuit.  The hourly rate charge for my services and other shareholders' services is $195.00.

4.    "After considering the factors set forth in Rule 1.04(b) of Article 10, Section 9 of the State Bar Rules, including (1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal services properly; (2) the likelihood that the acceptance of this representation will preclude other employment by the firm; (3) the fee customarily charged in this area for similar legal services; (4) the amount of time involved and results obtained thus far; (5) the time limitations imposed by the circumstances of this case; (6) the nature and length of the professional relationship with the client; (7) the experience, reputation, and ability of the lawyers performing the services; and (8) the nature of the hourly fee agreement in this case, it is my opinion that the services rendered on behalf of [LPP] were reasonable and necessary.

5.    "The legal services rendered in this matter include the following: review loan documents, prepare foreclosure related documents and meetings and communications with representatives of [LPP], review of the file documents, preparation of the Original Petition, respond to discovery, preparing the Motion for Summary Judgment and related documents and the actions necessary to obtain Summary Judgment, and preparing for and responding to discovery.

6.    "It is my opinion that attorneys fees in the amount of $20,000.00 is reasonable and necessary in this action through obtaining Summary Judgment, and that an additional $5,000.00 of attorneys fees is reasonable and necessary in the event of an appeal to the Court of Appeals, and that the sum of an additional $5,000.00

14

attorneys fees is reasonable and necessary in the event a petition for review is sought in the Supreme Court of Texas."

Notably, although Serafino's affidavit provides his hourly rate, it does not specify how many hours he spent on the various tasks alleged.

In issue three, appellant contends that Exhibit 3 to the Second Amended Motion for Summary Judgment—Serafino's attorney's fees affidavit—"fall[s] well short of the standards for legally sufficient evidence to calculate a reasonable attorney's fee award as articulated in *El Apple I., Ltd. v. Olivas*, [370 S.W.3d 757 (Tex. 2012)]."

This Court has addressed the requirements of an affidavit supporting a request for summary judgment on attorney's fees pursuant to article 38.001 as follows:

> The supreme court has recently addressed the specificity required of an affidavit supporting attorneys' fees under the lodestar method. *See Long v. Griffin*, —— S.W.3d ——, No. 11–1021, 2014 WL 1643271 (Tex. April 25, 2014). Under the supreme court's analysis in *Long*, the O'Quinn group's affidavits were insufficient to support the trial court's award.

> In *Long*, the supreme court characterized the attorney affidavit at issue as "only offer[ing] generalities":

>> It indicates that one attorney spent 300 hours on the case, another expended 344.50 hours, and the attorneys' respective hourly rates. The affidavit posits that the case involved extensive discovery, several pretrial hearings, multiple summary judgment motions, and a four and one-half day trial, and that litigating the matter required understanding a related suit that settled after ten years of

15

litigation. But no evidence accompanied the affidavit to inform the trial court the time spent on specific tasks. *See El Apple [Ltd. v. Olivas]*, 370 S.W.3d [757,] 763 [(Tex.2012).] The affidavit does claim that 30% of the aggregate time was expended on the assignment claim (part of which the Griffins prevailed on) and that the assignment issue was inextricably intertwined with matters that consumed 95% of the two attorneys' time on the matter. But without any evidence of the time spent on specific tasks, the trial court had insufficient information to meaningfully review the fee request. [*City of Laredo v.] Montano*, 414 S.W.3d [731,] 736–37 [(Tex. 2013)]; *El Apple*, 370 S.W.3d at 764.

*Boyaki v. O'Quinn & Assocs., PLLC*, 2014 WL 4855021, *15 (Tex. App.—Houston [1st Dist.] Sept. 30, 2014, pet. filed) (quoting *Long v. Griffin*, 442 S.W.3d 253, 255 (Tex. 2014)). This Court then concluded that the attorneys' affidavits were insufficient to support an award of summary judgment on attorneys' fees because the affidavits generally described the work done and the total hours spent thereon, but did not indicate the time expended on specific tasks. *Id.* at *16.

Here, the Serafino affidavit is even more deficient. While it provides an hourly rate for the shareholders in the firm and generally describes the work done, the affidavit does not indicate which attorneys from the firm worked on the case or how much time they spent on each task. "[A] lodestar calculation requires certain basic proof, including itemizing specific tasks, the time required for those tasks, and the rate charged by the person performing the work." *City of Laredo v. Montano*, 414 S.W.3d 731, 736 (Tex. 2013) (*citing El Apple*, 370 S.W.3d at 762).

16

Because such evidence is lacking here, we sustain Avery's third issue on appeal. We reverse the judgment as to the request for reasonable and necessary attorney's fees and remand for further proceedings regarding this request. *See Montano*, 414 S.W.3d at 737; *El Apple*, 370 S.W.3d at 760–64.

### *Sufficiency of Evidence as to Damages*

In his fourth issue on appeal, Avery contends that LPP did not carry its summary judgment burden to establish its damages. Specifically, Avery complains that there is no accompanying summary judgment evidence to support claims for late charges, accrued but unpaid interest, non-legal collection costs, taxes and insurance, and per diem interest. Avery also complains that Exhibit L to Tom Martin's affidavit—a Loan Transaction History Report—contains no information after a certain date in 2011 and that the interest listed in that exhibit is different from the amount of interest requested in the summary judgment. These alleged deficiencies, Avery contends, renders LPP's summary judgment proof deficient.

To collect on a promissory note, a plaintiff must establish (1) the existence of the note in question, (2) the defendant signed the note [or as here, the guarantee], (3) the plaintiff is the owner and holder of the note, and (4) a certain balance is due and owing on the note. *See Geiselman v. Cramer Fin. Group, Inc.*, 965 S.W.2d 532, 536 (Tex. App.—Houston [14th Dist.] 1997, no writ); *Cockrell v. Republic Mort., Inc.*, 817 S.W.2d 106, 111 (Tex. App.—Dallas 1991, no writ). If

17

no genuine issue of material fact exists as to any of these elements, plaintiff is entitled to summary judgment as a matter of law. *See* TEX. R. CIV. P. 166a(c). Here, Avery challenges the evidence presented to support the fourth element, i.e., the balance due and owing on the note.

The introduction of the note into evidence makes a prima facie case for the holder. *See Clark v. Dedina*, 658 S.W.2d 293, 296 (Tex. App.—Houston [1st Dist.] 1983, writ dism'd). Courts have upheld summary judgments based on affidavits that simply identified a promissory note and a lump sum figure as the principal balance and interest due and owing by the nonmovant on that note. *Thompson v. Chrysler First Bus. Credit Corp.*, 840 S.W.2d 25, 28–29 (Tex. App.—Dallas 1992, no writ); *Gen. Specialties, Inc. v. Charter Nat'l Bank–Houston*, 687 S.W.2d 772, 774 (Tex. App.—Houston [14th Dist.] 1985, no writ). *See* TIMOTHY PATTON, SUMMARY JUDGMENTS IN TEXAS: PRACTICE, PROCEDURE AND REVIEW § 9.06[2][e] (2d ed. 1996).

LPP's summary judgment evidence included the original promissory notes, Avery's guarantee of those notes, and the transfer of those notes from the FDIC as receiver for the New South Federal Savings Bank to Beal Bank and then to LPP. It also attached the affidavit of Tom Martin, an employee of LPP's loan servicer, in which he described the notes and the unpaid balance of each, including other "amounts owed under the terms of the Notes," such as late charges, unpaid interest

18

collections costs, and taxes and insurance. As supporting documentation for his calculations, Martin attached the business records reflecting all of the transactions on the loan account from December 1, 2006 through December 1, 2011. Those entries reflect the loan balance, monthly accrued interest, and offsets for interest and principal paid on the loan. Avery has not presented any controverting evidence raising a fact issue as to Martin's method of computation and the accuracy of his figures. *See 8920 Corp. v. Alief Alamo Bank*, 722 S.W.2d 718, 720 (Tex. App.—Houston [14th Dist] 1986, writ ref'd n.r.e); *Sharpe Lomas & Nettleton Finan. Corp.*, 601 S.W.2d 55, 57 (Tex. App—Dallas 1980, writ ref'd n.r.e.) (stating it was defendant's burden to point out any inaccuracy in computation or reasons for inability to do so). And, the difference in the interest reflected in the Loan Transaction History Report and that claimed in the summary judgment is clearly attributable to the 18% interest that continued to accrue as the case proceeded at a per diem amount of $373.71 on Note 1 and $100.17 on Note 2.

We overrule issue four.

## CONCLUSION

Having found reversible error in the portion of the judgment awarding reasonable and necessary attorney's fees, we reverse that portion of the judgment and remand for further proceedings on that issue only. The remaining portions of

the judgment, except as herein reversed and remanded as to attorney's fees, are affirmed.

Sherry Radack
Chief Justice

Panel consists of Chief Justice Radack and Justices Bland and Huddle.